Wilcomb E. WASHBURN, Appellant,

v.

Lelia K. WASHBURN, Appellee.

No. 83–331.

District of Columbia Court of Appeals.

Submitted Feb. 15, 1984.

Decided May 8, 1984.

Wilcomb E. Washburn, Washington, D.C., filed a brief pro se.

Charles H. Mayer, Washington, D.C., was on the brief for appellee.

Before MACK, PRYOR and TERRY, Associate Judges.

PER CURIAM:

This is an appeal from an order of the Superior Court denying appellant's motion for attorney's fees. Appellant had sought an award of $375 "for the actual cost of defending himself" against a motion to hold him in contempt, which was withdrawn by appellee after appellant had filed an opposition *pro se.* The trial court denied the motion for attorney's fees, finding that appellee's actions had not been unreasonable or improper, and that there was no evidence that appellee had acted in bad faith in filing the motion for an adjudica-

tion of contempt. Although we are troubled by some aspects of the case, we nevertheless affirm the trial court's ruling.

I

Appellant and appellee were divorced in 1981 after a lengthy and sometimes acrimonious proceeding in the trial court.[1] The judgment awarding appellant the divorce directed him to pay $7,500 in attorney's fees to his wife's counsel, in monthly installments of $500, following the transfer of certain properties. The judgment specified that all payments were to be made through the clerk of the Family Division of the Superior Court. By mistake, however, appellant made his first payment in April 1982 by mailing a check directly to appellee's counsel. After rereading the court's order and discovering his error, he thereafter made all his payments to the clerk of the court. Appellant delivered his check for the May installment to the clerk's office on May 24, but counsel did not receive the money from the clerk until June 2.

Appellant made the payments for June and July on time, but they were not forwarded promptly to counsel by the clerk. On July 22, having received no payment for June and fearing that he would receive none for July, appellee's counsel wrote to appellant:

I would like to have these payments made in a timely manner and in accordance with the court order. I do not mind if they are made in the latter part of each month for the month involved, but I do want to receive them within the proper month. I see no necessity for you to make these payments through the court, since you will have a cancelled check from me in every case and can easily show that you have made payment, but I have no objection to the payments coming through the court if you insist on

making them that way provided they get here by the end of the month.

I would like to have this matter brought up to date without having to take any further legal action so I urge you to see that the June and July payments are made very promptly, and that future payments be made as indicated above.

Appellant did not respond to this letter. When no payments came in July, appellee filed a motion on August 4 asking the court to hold appellant in contempt for "willful disobedience" of the court's judgment. Appellant, acting *pro se*,[2] filed an opposition on August 6, asserting that he had faithfully made the monthly payments to the clerk of the court as the judgment had commanded him to do, and suggesting that appellee's grievance lay with the clerk's office, not with him.

On August 9 appellee's counsel wrote to appellant, expressing his surprise at being told that appellant had made the payments in June and July, since he had never received them. He also said that after reading appellant's opposition, he had spoken with Sidney Sprinkle, head of the finance section of the clerk's office, who had told him "that there [was] no record of receipt by this office of either the June or July check." Counsel's letter concluded:

As I said to you in my earlier letter, all of this turmoil about payments could be easily resolved by your simply sending the payments directly to me by your personal check. *I am aware of the final paragraph of Judge Kessler's original opinion and order which says that all payments are to be made through the clerk of the court, but I am prepared to waive that requirement and have you pay me directly.* If you do so, you will have a cancelled check for each payment and there will be no issue as to whether you have paid or not.

---

1. The judgment in the divorce action was recently affirmed by this court in an unpublished memorandum opinion. *Washburn v. Washburn,* No. 81–906 (D.C. January 24, 1984).

2. Appellant had the assistance of counsel in the divorce proceeding, but since then he has represented himself.

In the absence of your agreement to the foregoing and/or making up the payments that are due, I intend to go forward with my motion because, in fact, I have not received the payments. [Emphasis added.]

Appellant responded in a letter dated August 11, pointing out that he had a "responsibility to pay the award in the manner ordered by the court," and stating that he did not intend to violate the court's order merely because counsel was willing to waive the requirement of payment through the clerk's office. On the same day, August 11, appellee's counsel received a check for $1,000 from the clerk's office, "unaccompanied by any explanation of why [he] had previously been told that the two payments in question had not been received" (Appellee's Brief at 3). Counsel immediately withdrew the motion to hold appellant in contempt.

■ A few weeks later appellant filed a motion seeking $375 in "reimbursement" for the "actual cost of defending himself against [appellee's] frivolous and ill-considered motion." After a hearing, the trial court denied the motion in an order which contained three findings:

1. That the record lacks any evidence showing that the defendant acted in bad faith in filing the Motion to Adjudicate plaintiff in contempt.

2. That the defendant's actions in her attempt to receive the attorneys fees that were due her pursuant to this Court's order were not unreasonable or improper in light of the fact that certain payments were not received by her counsel when due.

3. That the record indicates that the defendant acted on what she believed to be accurate information from the Superior Court's finance office, that no payments had been made for the months of June and July 1982.

The third finding cannot be sustained, because the motion to hold appellant in contempt was filed several days before counsel's conversation with Mr. Sprinkle; indeed, it is undisputed that counsel called Mr. Sprinkle *after* reading appellant's opposition to the motion. The first two findings, however, are supported by the record and give us a sufficient basis to affirm the denial of the motion for attorney's fees.

**II**

This court has not yet decided whether a *pro se* litigant may ever recover attorney's fees for his own efforts. Almost all the courts that have considered the issue, however, have refused to grant attorney's fees to *pro se* litigants, albeit for varying reasons. *See* Note, *Pro Se Can You Sue? Attorney Fees for Pro Se Litigants*, 34 STAN.L.REV. 659, 666–669 (1982). Only the federal courts in the District of Columbia have consistently awarded such fees, and even in these instances the courts have acted under specific statutes authorizing attorney's fee awards, though not necessarily to *pro se* litigants. *Crooker v. U.S. Department of the Treasury*, 213 U.S.App. D.C. 376, 663 F.2d 140 (1980) (Freedom of Information Act); *Quinto v. Legal Times of Washington, Inc.*, 511 F.Supp. 579 (D.D. C.1981) (Copyright Act); *Jones v. United States Secret Service*, 81 F.R.D. 700 (D.D. C.1979) (Freedom of Information Act); *Holly v. Acree*, 72 F.R.D. 115 (D.D.C.1976) (Freedom of Information Act), *aff'd sub nom. Holly v. Chasen*, 186 U.S.App.D.C. 329, 569 F.2d 160 (1977); *cf. Cuneo v. Rumsfeld*, 180 U.S.App.D.C. 184, 190–191, 553 F.2d 1360, 1366–1367 (1977).[3] Appellant's claim is not based on a statute, and thus the rationale of those cases, even if we chose to follow them, would not necessarily apply here.

3. It is incorrect to say that "the District of Columbia courts have consistently held that pro se litigants may receive attorney fees...." Note, *Pro Se Can You Sue?, supra*, 34 STAN.L.REV. at 667. While the *federal courts* in the District of Columbia have so held, the *District of Columbia courts* have never addressed the question. Today we address it for the first time but do not answer it.

Appellant maintains that the contempt motion which appellee filed below was unfounded and brought in bad faith. On the undisputed facts in this case, we conclude that the trial court did not err in denying appellant's request for attorney's fees on the ground that there was no evidence of bad faith and that appellee's actions were "not unreasonable or improper...." We therefore need not decide the broader issue of whether attorney's fees may ever be awarded to a *pro se* litigant. We leave that issue for resolution in some future case.

### III

It has long been established in American jurisprudence that attorney's fees are not ordinarily recoverable by a prevailing litigant unless a statute or a contract specifically provides for an award of such fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967); *accord, e.g., Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The courts have recognized a few narrow exceptions to this so-called "American rule," but in the absence of one of these exceptions, "the rule has been consistently followed for almost 200 years." *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114, 72 L.Ed.2d 511 (1982) (citations omitted). The exception on which appellant relies is the one which allows attorney's fees to be "awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (footnote omitted); *see Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n*, 385 A.2d 20, 24 (D.C.1978).

We agree with the trial court that appellant failed to make the kind of showing which would entitle him to relief under this exception.

In retrospect it is clear that appellee's counsel drew an erroneous inference when he failed to receive appellant's payments on time. Instead of assuming that appellant was in default, counsel should have made some inquiry at the clerk's office to find out whether appellant had made the payments there, as directed by the court, before filing a motion to hold him in contempt.[4] Moreover, counsel was not justified in offering to "waive" the requirement of the court's order that payment be made through the clerk's office. A court order is not waivable. Appellant had a right to insist on following the command of the court; indeed, had he not done so, he would have been in contempt. If appellee's counsel felt that this arrangement was inconvenient, he could easily have asked the court to modify its order; he should not have invited appellant to disobey it.

Nevertheless, despite counsel's precipitous filing of the contempt motion, we cannot say that his conduct was so egregious as to be vexatious or oppressive, or that he acted in bad faith. Given the bitter history of this case, and particularly the many harsh disputes over the distribution of property, it was not totally unreasonable for counsel to suspect that appellant might have been in default on his payments. Counsel also had a right to expect that the clerk's office would do its job properly, even though in this instance that expectation was not met. In these circumstances counsel's conduct cannot be deemed so outrageous or improper as to justify an award of attorney's fees under the standard set forth in the *F.D. Rich* case, *supra.*

The ultimate fault in this case, of course, rested with the Superior Court clerk's office. Appellant stated in his opposition to the contempt motion that when he made his

---

**4.** The motion was filed on August 4, but counsel's conversation with Mr. Sprinkle did not take place until after he had received and read appellant's opposition, which was filed on August 6 and served by mail the same day.

July payment, he alerted the clerk's office to the fact that previous payments had not reached their destination promptly. Two weeks later, however, according to counsel's August 9 letter, Mr. Sprinkle told appellee's counsel that his office had no record of any payments for June and July. If there was in fact no such record, we find its absence inexcusable. The clerk's office has a duty to maintain accurate, up-to-the-minute records of all matters before the court. Litigants and lawyers must depend on the proper performance by the clerk's office of its assigned tasks. Any failure in that performance can only diminish public confidence in the courts and the administration of justice. We are confident, therefore, that the Clerk of the Superior Court will take all necessary steps to ensure that the lapses which occurred in this case, whatever they may have been, will not occur again.

The order denying appellant's motion for attorney's fees is

*Affirmed.*