Michael F. MARSHALL, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 83–1156, 84–392.

District of Columbia Court of Appeals.

Argued July 3, 1985.

Decided July 10, 1985.*

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. Appellee's motion for publication has been granted by the court.

*Melvin A. Marshall*, Washington, D.C., for appellant.

*Charlotte Brookins-Pruitt*, Asst. Corp. Counsel, Washington, D.C., with whom *Inez Smith Reid*, Corp. Counsel, *John H. Suda*, Principal Deputy Corp. Counsel, and *Charles L. Reischel*, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before MACK, NEWMAN, and TERRY, Associate Judges.

TERRY, Associate Judge.

Appellant was convicted of driving while intoxicated, in violation of D.C. Code § 40–716(b)(1) (1984 Supp.). He appeals from his conviction (No. 83–1156) and from a later order revoking his probation (No. 84–392). In No. 83–1156 we affirm the conviction. In No. 84–392 we dismiss the appeal as moot because appellant has already served his full sentence, and because there are no collateral consequences resulting from the probation revocation.

I

Appellant drove his car into the rear of another car. A police officer who witnessed the collision, believing that appellant was under the influence of alcohol, radioed for assistance from the Alcohol Enforcement Unit. When Officer Kenneth Buckholdt of that unit arrived, he noticed that appellant was unsteady on his feet and had a strong odor of alcohol on his breath. Officer Buckholdt performed a series of "field sobriety tests" and concluded that appellant was intoxicated; accordingly, Buckholdt placed him under arrest and took him to the police station.

At the station appellant was advised of his rights under the Implied Consent Act from a police Form PD–29. The first paragraph of that form, which was in evidence as Government Exhibit No. 1, states:

> Any person who operates a motor vehicle within the District is deemed to have given his or her consent to two chemical tests of his or her breath, urine or blood for the purpose of determining blood-alcohol ... content of his or her person.

Appellant signed the form and indicated, in his answer to a question on the form, that he was willing to take a blood test.[1] He refused, however, to take a breath test, despite being advised by another paragraph on the form:

> The law provides that the arresting officer or any other appropriate law enforcement officer shall elect which chemical test shall be administered, unless you object to a particular test on valid religious or medical grounds.

*See* D.C. Code § 40–502(b) (1984 Supp.). After speaking by telephone with his attorney, appellant refused again to take a breath test; consequently, Officer Buckholdt decided to take him to District of Columbia General Hospital for a blood test.

As they were leaving the station, appellant's lawyer arrived. After some conversation, the lawyer told the officer that appellant would not take the breath test. Buckholdt started once again to take appellant to the hospital, accompanied by his attorney. Once outside the station, however, the attorney had a change of heart and told Officer Buckholdt that appellant would take the breath test after all. Buckholdt went back inside and informed anoth-

---

1. His willingness to take a blood test may have been somewhat grudging. Officer Buckholdt testified that when appellant was advised "that because of it being an accident, blood would be drawn," appellant replied that "he was refusing to take a [breath] test and that [the police] would have to take the blood."

er officer that appellant had changed his mind, but the other officer said in effect that appellant had already made his decision and would have to stick with it.

Appellant, his attorney, and Officer Buckholdt then went to the hospital, where a blood sample was taken from appellant over the objection of his attorney.[2] Appellant resisted the taking of the blood and had to be forcibly restrained. Analysis of the blood sample showed that appellant's blood alcohol level was .27 percent.

Appellant moved to suppress the results of the blood test. The court denied the motion and, on stipulated facts, found appellant guilty of driving while intoxicated. The court then sentenced appellant to thirty days in jail and a fine of $200. The jail term was suspended on the condition that appellant attend and complete the District's Traffic Alcohol Program. When he failed to complete the program, his probation was revoked, and he was incarcerated for thirty days.

II

■ Appellant challenges the taking of the blood sample on various grounds, all of which are meritless in light of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). *See also South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). The only point that even warrants discussion is his claim that his belated request to take a breath test, made after he had twice refused to do so (but had expressed a willingness to take a blood test), was reasonable. He pins his hopes on certain language in *Schmerber v. California:*

> It would be a different case if the police initiated the violence, refused to respect

a *reasonable* request to undergo a different form of testing, or responded to resistance with inappropriate force.

384 U.S. at 760 n. 4, 86 S.Ct. at 1830 n. 4 (emphasis added). On the facts of this case, we hold that appellant's request to take the breath test, after twice refusing to do so (once on the advice of counsel), was unreasonable.[3]

■ Appellant also argues that the trial court abused its discretion in ordering him to appear in court for a status hearing despite the fact that he waived his right to appear under Super. Ct. Crim. R. 43. This claim is both frivolous and moot. Rule 43 does not authorize a defendant to waive a direct order of the court requiring him to be present. "A court order is not waivable." *Washburn v. Washburn*, 475 A.2d 410, 413 (D.C.1984). Furthermore, since appellant later appeared in court and the bench warrant which had been issued upon his non-appearance was quashed, there is no possibility that appellant will suffer any collateral consequences from the court's order. Consequently, this issue is moot. *See, e.g., Holley v. United States*, 442 A.2d 106 (D.C.1981).

■ Finally, appellant contends that his probation was improperly revoked because the condition which he failed to perform was unconstitutional. Because appellant has already served his full sentence, however, this claim is also moot. *Smith v. United States*, 454 A.2d 1354 (D.C.1983); *Holley v. United States, supra; see Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982).

III

In No. 83–1156 the judgment of the Superior Court is affirmed. In No. 84–392 the appeal is dismissed as moot.

*It is so ordered.*

---

2. According to the officer's testimony, the attorney was escorted out of the building by the hospital's security police, at the request of the attending physician, when he attempted to interfere with the physician's drawing a blood sample from appellant.

3. Appellant's suggestion that his change of mind was reasonable because of a recent amendment to the law is totally without merit. *See United States v. Casson*, 140 U.S.App.D.C. 141, 434 F.2d 415 (1970).

MACK, Associate Judge, concurring.

Under a statute repealed only a few months before appellant's traffic accident, appellant was entitled to refuse to submit to *any* type of alcohol testing, and could choose instead to have his license suspended. D.C.Code §§ 40–502 (a), –505 (1981) (repealed 1982). It was only in accidents involving death or bodily injury—not the case here—that testing was mandatory under the old statute. D.C.Code § 40–502 (b). The new statute, which was not yet incorporated into the published D.C.Code at the time of appellant's accident, eliminated this choice in *all* accident cases. Appellant's attorney argues that he initially told his client not to take the breathalyzer test because he was unaware of the change in the law, and therefore believed that appellant could still choose to have his license suspended rather than undergo any form of testing. He further asserts, and government counsel seems to agree, that once the police explained the change in the law to him he counseled his client to take the breathalyzer test; and at that point the police refused the request and forced appellant to take a blood test.

If the record actually reflected that once the police explained the change in law to counsel, he advised his client to take the breathalyzer test, but the police then refused to administer it, I would be inclined to hold that appellant's choice of the breathalyzer was a reasonable one under *Schmerber v. California,* 384 U.S. 757, 760 n. 4, 86 S.Ct. 1826, 1830 n. 4, 16 L.Ed.2d 908 (1966), and should have been honored. The record, however, reveals no causal connection between the explanation to counsel that the law had changed, and appellant's request for the breathalyzer. Officer Buckholdt explained that he gave a copy of an implied consent form setting forth rights under the new act to counsel; but that even after counsel had read the form, counsel still advised his client to refuse the breathalyzer, and appellant did so. It was only when the police made it evident that they fully intended to administer a blood test—taking appellant out of the police station for transportation to the hospital—that counsel for appellant advised him to change his mind. Under these circumstances, the due process concerns outlined in the *Schmerber* footnote do not come into play. I therefore concur in the result reached by the majority.