It LOVE, Judge.
STATEMENT OF CASE
On March 30, 1995, the defendant pled guilty to violating La. R.S. 14:60 relative to aggravated burglary. The court sentenced the defendant to serve six years at hard labor; however, the court suspended the sentence and placed the defendant on two years active probation. As a special condition of probation the defendant was ordered to pay the victim $846.00 in restitution. The court also ordered the defendant to serve six months in parish prison, with credit for time served. Court costs were waived, and the defendant was assessed the minimum cost per month for probation supervision.
*1241 By letter dated March 7, 1997, the defendant’s probation officer advised the court that the defendant had violated the terms of his probation by only paying $35.00 of the $846.00 owed as victim restitution. The probation officer requested a rule to show cause why the defendant’s probation should not be revoked. Following a status hearing on April 8, 1997, the court extended the defendant’s probation until March 30,1998.
On October 31, 1997, an arrest of capias notification was filed notifying the court that the defendant had been arrested. A probation violation status hearing |¿was originally scheduled for November 4, 1997, but was later reset for November 17, 1997. Meanwhile, by letter dated November 10, 1997, the defendant’s probation officer advised the court that the defendant had violated his probation by failing to comply with two terms of probation. More specifically, the probation officer stated that the defendant had failed to refrain from criminal conduct in that on September 11, 1997, he was arrested for aggravated battery and aggravated burglary. Further, the probation officer stated that the defendant had only paid $250.00 of the $846.00 owed as victim restitution. The defendant’s probation officer requested a rule to show cause why the defendant’s probation should not be revoked. On November 11, 1997, the State also filed a rule to show cause why probation should not be revoked. The sole basis given by the State for revoking probation was that the defendant had violated a condition of probation by failing to refrain from criminal conduct in that he was arrested for the crimes of aggravated battery and aggravated burglary.
On November 17, 1997, a status hearing was held, and a hearing on the rule to revoke probation was initially set for December 10, 1997. On December 10, 1997, the court granted a joint request to continue and reset the matter for December 16, 1997. On December 16, 1997, the court held a status conference in the matter. At the request of defense counsel, the court again continued the hearing on the rule to revoke. The new hearing date was December 19,1997.
Following the December 19, 1997 hearing, the trial court revoked the defendant’s probation and ordered that the original six-year sentence be made executory. On January 20, 1998, the defendant filed a notice of appeal, and on January 26,1998, an appeal was granted. The appeal record was lodged in this court on November 17, 1999, and a briefing notice was sent to defense counsel. |aThe notice was returned as undelivered. Subsequently, the Louisiana State Bar Association informed this court that defense counsel had been suspended from the practice of law. On December 2, 1999, the matter was remanded to the trial court for a determination of counsel and/or a determination of whether the appeal should be dismissed. On December 13,1999, the court granted the defendant an out of time appeal and appointed the Louisiana Appellate Project to represent the defendant.
The defendant’s brief was filed on January 11, 2000. On April 25, 2000, a notice was filed notifying this court that the defendant had been released from prison. The defendant acknowledges that his release from confinement implicated whether this appeal, which is limited to challenging the revocation of his probation, is moot. The defendant avers that because he remains on active parole until the year 2003 his chance of having his parole revoked is enhanced by his probation revocation. Accordingly, he contends that he has demonstrated sufficient collateral consequences for this court to retain jurisdiction over the case.

STATEMENT OF FACT

At the probation revocation hearing of December 19, 1997, defense counsel noted that the State had refused prosecution on the defendant’s last pending open charge, a simple battery charge. Following a brief discussion concerning the amount of restitution the defendant had paid, defense *1242 counsel presented testimony from Joyce Lebanks, the alleged victim of the battery and burglary charges forming the basis for the probation revocation hearing.
Ms. Lebanks, the defendant’s girlfriend, acknowledged that the defendant was arrested for committing an alleged battery on her. However, Ms. Lebanks denied that the defendant struck her. Ms. Le-banks stated that she had been living | ¿with the defendant for three years. She stated that the defendant was “under the influence” when he kicked down the door of the apartment and approached her the day in question. She wrestled with the defendant because she did not want him to hit her. While admitting that she had a swollen face when the police arrived, Ms. Lebanks stated that her face was swollen because she fell down the steps and hit her face on the concrete as she was running. She denied having a cut under her left eye; she stated that her eye was just swollen. Ms. Lebanks stated that the defendant had never hit her before.
Ms. Lebanks further testified that her sixteen-year-old daughter called the police because she did not want to see the defendant and her mother arguing. Ms. Le-banks denied that the defendant hit her daughter. Rather, she stated that her daughter slid and was bruised when she attempted to come between her and the defendant. According to Ms. Lebanks, her daughter only had little scratches on her knee.
Ms. Lebanks testified that at the time of the incident she and the defendant were living together in the apartment. She stated that the defendant pays the rent for the apartment, but on that particular day the keys were inside the apartment. She further testified that the defendant had never done anything like this before, and she insisted that he did not hurt her or her children.
Ms. Lebanks testified that once released, the defendant would be coming back to her house because she knew what kind of person he was. When asked on cross-examination if she knew he pled guilty to aggravated burglary of Ms. Catherine Hill’s apartment, she stated that she could only judge him by how he treated her and her children. She stated that she wanted the defendant back in her home. She further stated that her children also missed the defendant.
| BMs. Lebanks admitted that on the night of the incident the children were upset, but she stated that everybody was willing to give him another chance since it was his first time. She reiterated that the children had never seen the defendant, “hit me or even slap me before.” She further stated the children knew he was under the influence of alcohol.
Ms. Lebanks stated that on the night the incident occurred, she told the defendant to go to his mother’s house because he had been drinking, and she did not want to fuss. She stated that it was a mistake to call the police.
When asked if the defendant became violent when he had been drinking she stated that she would not say he gets violent. She said he would usually go home and go to sleep. She stated that on the night in question she “got loud on him and was asking him a question and one thing just led to another.”
Ms. Lebanks also stated that she had spoken to Mr. Dean, the defendant’s employer, and Mr. Dean indicated that he was holding the defendant’s job for him until he was released from jail. Ms. Le-banks testified that she was aware that the defendant had paid three hundred fifty dollars as restitution payments to Catherine Hill. The basis for her knowledge of this fact was not stated.
Following Ms. Lebanks’ testimony the court asked if the State or defense had anything further to present. Defense counsel admitted that he had not actually seen the rule to revoke in the file, but he assumed that at the time it was filed the alleged offense involving Ms. Lebanks was *1243 still active. However, he emphasized that the charge had since been refused. Defense counsel conceded that restitution had not been paid in full; however, he estimated that around $500.00 of the $800.00 total had been paid. He further stated that the defendant would be able to prove how much restitution had been paid when he returned to court in January.
| BDefense counsel stated that Ms. Hill, the victim in the case, would suffer if the defendant remained incarcerated because she could not get paid if the defendant was in jail. He further stated that Ms. Le-banks, the alleged victim in the refused charge, also relied upon the defendant for support. Thus, defense counsel argued that the court would be penalizing Ms. Hill and Ms. Lebanks if it penalized the defendant for a crime that it was not clear he committed. Noting that the defendant had a job waiting for him, defense counsel requested that the defendant be allowed to return to work so that he could make the final restitution payments that were due in the case.
The State, arguing that a conviction was not needed in order for probation to be revoked, objected to early release for the defendant based merely on the refusal of the charges. The State argued that it was obvious that the victims were suffering on the night the incident occurred. Following arguments, the court revoked the defendant’s probation.

ERRORS PATENT

A review of the record for errors patent reveals none.
ASSIGNMENT OF ERROR
In his sole assignment of error the defendant argues that the trial court abused its discretion when it revoked his probation without properly determining that he had committed a revocable offense.
Prior to addressing the merits of the defendant’s assignment of error, the court will address two procedural issues. The first issue is whether the appeal of the judgment revoking probation should be dismissed.
|7Ordinarily, there is no right of appeal from a probation revocation. La. C.Cr.P. art. 912. However, courts generally treat such appeals as applications for supervisory writs. State v. Manuel, 349 So.2d 882 (La.1977); State v. Russell, 570 So.2d 91, 92 (La.App. 4th Cir.1990). Accordingly the defendant’s appeal is converted into a writ application.
The defendant notes that his release from prison may raise questions as to whether his appeal, which is limited to challenging the order revoking his probation, is moot. Generally where a defendant completes his sentence and has been released from custody, his appeal is dismissed as moot. State v. Napier, 94-717 (La.App. 5 Cir. 2/15/95), 652 So.2d 27, citing State v. Harris, 585 So.2d 649 (La.App. 4th Cir.1991). Thus, in Napier where the defendant had served her sentence and been released, the court dismissed her appeal challenging the imposition of the remainder of her 90-day sentence.
However, the defendant argues that his appeal is not moot because he is on active parole until 2003. He argues that his chance of having his parole revoked is enhanced by his probation revocation. Accordingly, he argues he has shown sufficient collateral consequences for the Court to retain jurisdiction over his case.
The defendant fails to specify how his probation revocation enhances his chances of having his parole revoked. Obviously, the Parole Board was aware of the probation revocation when it paroled the defendant. The only way that the probation revocation could conceivably impact the defendant’s parole status would be if he is arrested or faces parole revocation in the future. Conceivably the parole board could consider the prior probation revocation as one of the factors to be considered in a future parole revocation proceeding. However, in Lane v. Williams, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), *1244 the court rejected a similar | (¡argument that the collateral consequences doctrine covers future harm caused by the mere presence of a parole violation on a person’s record.
Lane, however, is distinguishable from this case in that in Lane, the petitioners’ parole terms had expired, and the petitioners were no longer subject to any direct restraint as a result of the parole terms. In the instant case the defendant will remain on parole until the year 2008.
Justice Barham commented on the effect of release on parole on the issue of mootness in a concurrence in State ex rel. Davidson v. Henderson, 281 So.2d 692 (La. 1973). In that case the Court held that a prisoner’s complaint that he should have been given credit for time spent in a Texas prison became moot when he was discharged from custody in Louisiana. Justice Barham, concurring in the decision, stated, “The record does not reflect the nature of the release as unconditional. If parole or other limitations are exerted on this release the matter is not moot.” (emphasis added) State ex rel. Davidson v. Henderson, 281 So.2d at 692. Similarly, in Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the Supreme Court rendered a decision in a case involving a petitioner who had been paroled. The court summarily rejected the idea that the case was moot because the petitioner had been paroled, noting:
This case is not moot despite the fact that respondent has been paroled. Respondent remains in the “custody” of the State, ... and whether respondent must serve the sentence now under attack consecutively to his prior sentences will affect the date at which his parole will expire under state law, ... Respondent’s challenge to the duration of his custody therefore remains live, (citations omitted)
Mabry v. Johnson, 467 U.S. at 507, 104 S.Ct. at 2546, n. 3.
19Several courts from other jurisdictions have also addressed the mootness issue as it relates to defendants who have been physically released from custody at the time that an appeal is being decided. In Baty v. Slater, 161 Or.App. 653, 984 P.2d 342 (1999), on reconsideration, 164 Or. App. 779, 995 P.2d 1176 (2000), the Court of Appeal for the State of Oregon considered the issue of whether a petitioner could question his entitlement to credit for days incarcerated as a condition of probation. During the pendency of his appeal, the petitioner was released from incarceration on post-prison supervision. The defendant moved to dismiss the appeal on the ground that the petitioner’s release rendered the appeal moot. The court originally agreed and granted the motion to dismiss. However, the petitioner sought reconsideration arguing that a collateral consequence of the Department of Corrections’ failure to release him on the correct date was the improper extension of his overall sentence, including the period of post-prison supervision. The petitioner argued that if he prevailed in his argument the combined period of incarceration and post-prison supervision under his sentence would be shortened by 110 days. Finding that a decision on the appeal would have some practical effect on the rights of the parties, the court concluded the appeal was not moot and denied the motion to dismiss.
The exact issue presented in this case was considered in State of Idaho v. Russell, 122 Idaho 488, 835 P.2d 1299 (1992). The Supreme Court of Idaho issued an order reversing the revocation of a defendant’s probation. Shortly after the opinion was rendered, the defendant was released on parole. The State filed a motion to dismiss the appeal, arguing that the defendant’s attack on his probation revocation had become moot. The court rejected the argument noting that if the defendant had successfully completed his term of probation he would have had the opportunity to reduce his conviction to a misdemeanor. The court further noted, “Also, the | ¡¡¡penalties for violating a condition of probation can be less severe than that for a *1245 parole violation, which is generally an immediate return to jail. Accordingly, we conclude that this case is not moot and deny the State’s motion to dismiss the appeal.” Russell, 835 P.2d at 1301, n. 3.
Also see, Hahn v. Burke, 430 F.2d 100 (7th Cir.1970), cert. denied by Burke v. Hahn, 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971), the petitioner challenged his incarceration following the revocation of his probation. The petitioner had pled guilty to a burglary in the State of Wisconsin. His probation was later revoked without a hearing on the basis that he had violated its terms by absconding to California. Upon his return to Wisconsin, he was incarcerated. He filed various petitions in the state courts challenging the revocation of his probation. Meanwhile he was extradited to Illinois to stand trial on several indictments for burglary. He was never tried on those indictments, but he was tried and sentenced to 5-10 years for escaping from jail while awaiting trial on the burglary charges. He was subsequently returned to prison in Wisconsin where he received a mandatory conditional release and was placed on a one-year probation. At the time that the original petition was filed the petitioner was still incarcerated because of the revocation in Wisconsin. However, at the time that the appeal was heard, the petitioner was no longer incarcerated based on that revocation. In addressing the issue of whether the appeal was moot the court stated:
As to mootness, although petitioner is not presently serving his challenged Wisconsin sentence, this appeal is not moot. The probation revocation affixes a permanent blemish to petitioner’s record. If petitioner ever has future difficulties with the law in Wisconsin, the judge could take into account the fact that petitioner’s probationary status was at one time revoked. Moreover, in this instance, petitioner may be entitled to his outright Wisconsin release as of September, 1969, as a result of | uthe invalid revocation of probation and attendant lack of credit given him on his five-year sentence of September, 1964. Therefore, there are collateral consequences in allowing petitioner’s Wisconsin burglary conviction and parole revocation to remain on his record, (emphasis added)
Hahn v. Burke, 430 F.2d at 102.
The present case is somewhat analogous to In Interest of Gras, 320 So.2d 578 (La.App. 4th Cir.1975), writ granted and case remanded, 323 So.2d 473 (La.1975). In Gras, a juvenile appealed his parole from the custody of the Department of Corrections into the custody of the Health and Human Resources Administration. The Supreme Court found that the issue of his parole was not moot because he remained under the effect of the prior adjudication and was still subject to the juvenile court’s jurisdiction.
Like the juvenile in Gras, the defendant in the instant case remains under the effects of his probation revocation. As a parolee, the defendant remains in the legal custody of the Department of Public Safety and Corrections, and he remains subject to the orders and supervision of the parole board. La.R.S. 15:574.7(A). The parole board has extensive powers to regulate the conduct of the parolee. La.R.S. 15:574.2. If the parolee violates the conditions of his parole and the board revokes his parole, the parolee “shall be returned to the physical custody of the Department of Public Safety and Corrections, office of corrections services, and serve the remainder of his sentence as of the date of his release on parole, subject to consideration by the board of any commutation of the sentence, and any diminution of sentence earned for good behavior while in the institution.” La. R.S. 15:574.9(E).
| ^Because the defendant has not yet served his entire sentence, it is obvious that he has merely been released from the physical custody of the Department of Public Safety and Corrections. The defendant continues to suffer from restraints on his liberty; Absent the revocation of his *1246 probation, the defendant would no longer be on parole and subject to the various conditions customarily imposed upon parolees. Rather, his liberty would be unrestricted. The defendant has shown sufficient collateral consequences to defeat any suggestion of mootness because of his parole status.
In finding that the appeal is not moot, we must review the basis for the revocation of probation.
First the defendant argues that the decision revoking his probation was not rendered pursuant to a proper hearing. He argues the record supports a finding that the hearing was procedurally flawed in that 1) he was clearly not expecting a ruling on the probation revocation at the hearing; 2) the hearing began without any presentation by the State on the merits of the show cause hearing; and 8) the court ruled immediately after hearing Ms. Le-banks’ testimony, thereby denying him an opportunity to testify on his own behalf or to confront his accusers.
The defendant notes that although defense counsel made several references to an upcoming hearing, the court never once indicated that it was going to rule that day. It is apparent that defense counsel expected a further hearing on the matter in January. However, the basis for his belief that another hearing would be held in January is not apparent. The rule to show cause why probation should not be revoked was originally set for December 10, 1997. The matter was apparently continued at the request of both parties to December 16, 1997. Finally, at the request of defense counsel, the hearing on the rule was continued to December 19, |131997. There is no further reference by the court or the State to any future hearing or to any further continuance. The defendant’s assertion that the parties anticipated a future hearing has not been substantiated.
The record supports the defendant’s statement that the case began without any presentation from the State. However, at no time did the defendant object to the State’s failure to present a case. Rather, when the court indicated that it understood the defendant wanted to present testimony, the defendant immediately proceeded to question his first and only witness. The mere fact that the defendant proceeded to question his witness at the commencement of the hearing does not render the proceedings invalid. The burden of proof in a revocation proceeding rests with the State, and ordinarily the party with the burden of proof proceeds first. However, the rules of evidence are relaxed in probation revocation proceedings. Absent a showing that the court shifted the burden to the defendant by allowing him to proceed first, the failure of the State to proceed first has no legal significance.
Next the defendant argues that the court ruled immediately upon hearing Ms. Lebanks’ testimony, thus denying him any opportunity to testify in his own behalf or to confront his accusers. The record does not substantiate the defendant’s assertion that the judge ruled prior to according him an opportunity to testify. Immediately after Ms. Lebanks completed her testimony, the trial judge asked defense counsel and the State if either had anything further to present. Both sides stated no. When the court then asked defense counsel again if there was anything further that he wanted to present, counsel commenced making an oral argument related to the charge that had been refused and the issue of restitution that had not' | T4been paid. The court did not deny the defendant an opportunity to testify or confront his accusers.
Finally, the defendant argues that even if the procedure was not defective, the court had no basis for revoking his probation based on the evidence presented.
Notwithstanding the numerous references to the defendant’s failure to pay the *1247 restitution due the victim, it is clear that failure to pay restitution was not the reason for the court’s decision to revoke the defendant’s probation. Rather, after hearing the remarks from both sides, the trial court gave the following reasons for revoking the defendant’s probation:
Mr. Dorest, the Court has waited for you to pay the lady back, Ms. Hill (sic). I ultimately, of course, agreed to allow you to have the probated sentence, with some reluctance. I don’t know that I expressed it directly, but with some reluctance. My reluctance is indicated by the fact that I did order you to serve six months in the Orleans Parish Prison as a special condition of this probation because I was aware that there was, in fact, a crime of violence, alleged to have been committed against the lady by you, that you did ultimately plead guilty to. But at the same time I was aware that the State is again confronted with a situation that continues on and on and on. It exists daily in our society, and this is certainly no reflection on the lady who is out in the audience. My heart goes out to this lady and my heart goes out to these three children.
¿fi }■< if; }{i
There is no way in the world I am going to give you another chance. Forget the money you own (sic) Ms. Hills (sic). Forget anything — and the sad part of this is, and I am not here to speak for the lady that spoke here today, because she’s trying to protect you and I understand that, ma’am, and you can walk out of here upset with me. You can walk out of here feeling whatever you might fell (sic) toward me, and I understand that. I will disagree with you if it’s negative, but I — I truly respect your right to do so. And I don’t mean to embarrass you. But you are caught in a catch 22 situation. You’ll— you’ll subject yourself and your I ^children to the abuse of this man because he pays the bills. And that’s ulti-' mately not fair to you. But if that’s what you want, that’s ultimately then what you want, and I can never prevent you from living under those conditions, but I am convinced that it’s not what the children want in the deep recesses of their heart, and it is for them that this man’s probation is revoke (sic) this morning.
His sentence is six (6) years in the custody of the Department of Corrections. The objection is noted.
The above quoted remarks tend to show that the trial court was revoking the defendant’s probation because of the incident that occurred at the home shared by the defendant and Ms. Lebanks.
In its rule to revoke probation, the State alleged the defendant was arrested for the crimes of aggravated battery and aggravated burglary. The evidence presented at the hearing clearly negated the allegation that the defendant committed a burglary because Ms. Lebanks admitted that the defendant lived in the home with her, that he paid the rent, and that he had a key to the home. Further, the only charge that remained just prior to the hearing was a charge of simple battery. That charge was refused by the State, and Ms. Lebanks testified that the defendant did not hit her or her daughter. Notwithstanding Ms. Lebanks’ testimony it appears the court may have concluded that the defendant committed a battery on Ms. Lebanks and/or her daughter. However, in light of the lack of testimony or evidence to support a finding that the defendant was armed with any type of weapon at the time of the incident, the only possible crime that could have been committed was that of simple battery, which is a misdemeanor. La. R.S. 14:35. The issue of when the commission of a misdemeanor can form the basis for a probation revocation is addressed in La.C.Cr. P. art. 901 which states in relevant part:
b fiArt. 901. Revocation for commission of another offense
*1248 A. In addition to the grounds for revocation of probation enumerated in Louisiana Code of Criminal Procedure Article 900, when a defendant who is on probation for a felony commits or is convicted of a felony under the laws of this state, or under the laws of another state, the United States, or the District of Columbia, or is convicted of a misdemeanor under the provisions of Title 14 of the Louisiana Revised Statutes of 1950, or is convicted of a misdemeanor under the provisions of the Uniform Controlled Dangerous Substances Law contained in Title 40 of the Louisiana Revised Statutes of 1950, his probation may be revoked as of the date of the commission of the felony or final conviction of the felony or misdemeanor.
Comments to La.C.Cr. P. art. 901 support a finding that evidence of commission of a misdemeanor is not sufficient to support a revocation of probation. The official revision comment of 1966 states:
(a) Commission of another felony when a defendant is on probation for a felony, or of any offense when a defendant is under a suspended misdemeanor sentence, is such a serious matter that it will ordinarily result in revocation of the probation or suspended sentence. However, in some cases revocation may be unduly drastic; therefore, the court is given discretion. Accord: former R.S. 15:538, as amended by Act 360 of 1960.
(b) A distinction is made between probation in felony cases and suspension of misdemeanor sentences. In felony pro-bations, unless refraining from a particular misdemeanor is a condition of the probation, only the conviction of another felony authorizes revocation of the probation. This clears up uncertainty in the jurisprudence, resulting from incompleteness of the statute law, as to the ground for revocation of probation in felony cases.... The 1960 probation law, Act 360 of 1960, continued this uncertainty, and some anomalous results could follow if the supreme court would continue to apply former R.S. 15:538, which is a provision relating to suspended misdemeanor sentences, to felony probations, as it did in State ex rel. Waggoner v. Cozart, |17222 La. 1039, 64 So.2d 424 (1953), and State v. Lucas, 225 La. 27, 71 So.2d 870 (1954). For example, it would be unduly harsh to revoke a felony probation and subject the defendant to a long prison term for the sole reason that he had committed some petty misdemeanor ...
Clearly La.C.Cr.P. art. 901(a) authorizes revocation of probation when a defendant who is on probation for a felony is convicted of a misdemeanor under the provisions of Title 14 of the Louisiana Revised Statutes. See, State v. Clark, 600 So.2d 785 (La.App. 5th Cir.1992), However, as noted in State v. Rexford, 95-152 (La.App. 5th Cir.6/28/95), 658 So.2d 27, the evidence must show a conviction; mere evidence of a commission of a misdemeanor is not enough.
The State failed to produce any evidence to establish that the defendant committed a felony or that he had been convicted of a misdemeanor. Accordingly, the State failed to prove that revocation of the defendant’s probation was warranted.
Because the defendant is still on active parole until the year 2003, it does not appear that the case is moot. The mere fact that the defendant was arrested for burglary and aggravated battery was not sufficient to justify revocation of the defendant’s probation. The State failed to prove that the defendant committed a felony or that he was convicted of a misdemeanor. Accordingly, it appears the court abused its discretion by revoking the defendant’s probation.
DECREE
' The defendant’s appeal is converted to a writ application and the writ application is *1249 granted. Furthermore, the judgment revoking the defendant’s probation is reversed.
WRIT GRANTED AND REVERSED.