| .BYRNES, Chief Judge.
STATEMENT OF THE CASE
Defendant George Allen was charged by bill of information on January 28, 2000 in count one with distribution of cocaine, a violation of La. R.S. 40:967(A), and in count two with possession of cocaine, a violation of La. R.S. 40:967(C).[1] Defendant pleaded not guilty at his February 3, 2000 arraignment. On March 2, 2000, defendant was tried by a twelve-member *27 jury and found not guilty as to count one and guilty as charged as to count two. On May 2, 2000, defendant was sentenced to three years at hard labor as to count two, suspended, and five years active probation, with special conditions. The trial court denied defendant’s motion to reconsider sentence, and granted his motion for appeal. On August 17, 2000, the trial court revoked defendant’s probation and made his three-year sentence executory, with special conditions.

FACTS

New Orleans Police Detective Donald Polk testified that on December 13, 1999, he was working as a plainclothes undercover officer in the area of Chef Menteur Highway and Dale Streets, attempting to purchase narcotics. He was |?alone, driving a non-traditional police vehicle, and wearing a transmitting device enabling other officers to monitor and record any conversation between himself and drug sellers. Det. Polk was also carrying currency that had been photocopied. Det. Polk encountered Tommie Wilson on Dale Street, and asked Wilson for help in purchasing cocaine. Wilson told the officer that he too was looking for cocaine, and got into Det. Polk’s vehicle. Wilson directed the officer four blocks away to a residence located at 4705 Haydel Street. Upon arrival, Wilson said Det. Polk could come in with him, but advised the officer not to let persons inside know that the two had just met. A male with a gray shirt opened the door of the residence, which was filled with what Det. Polk characterized as “crack heads.” Once inside, the shirtless defendant approached Det. Polk and asked him what he needed. Det. Polk said something about needing a couple of “dimes,” to which defendant replied “Sure.” Defendant walked to the rear of the residence. When he returned, Det. Polk gave defendant one ten-dollar bill and one five-dollar bill, and defendant handed him two pieces of crack cocaine. Det. Polk and Wilson returned to the car, and the officer gave a predetermined signal to the other officers that a transaction had been completed. Det. Polk let Wilson out around the corner, giving him a photocopied five-dollar bill as a tip, and Wilson walked back toward the Haydel Street residence. Det. Polk identified an audiotape from that day, and it was played for the jury. Det. Polk identified- the two pieces of crack cocaine he purchased from defendant. Det. Polk testified that Det. Sislo photographed defendant after officers descended upon the Haydel Street residence, he identified the photograph as depicting the person who sold him the cocaine, and defendant was arrested.
Det. Eugene Landry testified that he acted in a surveillance capacity during the December 13, 1999 undercover operation involving Det. Polk. His vehicle was | equipped with monitoring and recording devices. Det. Landry observed Wilson enter Det. Polk’s vehicle in the 4600 block of Dale Street, and then drive to 4705 Haydel Street. He heard Wilson tell Det. Polk not to let anyone inside know that they had just met, and saw them enter the residence. Det. Landry heard someone ask Det. Polk what he needed, and heard Det. Polk reply that he needed two “dimes.” Det. Polk subsequently gave the predetermined signal that he had the cocaine in his possession, and Det. Landry observed him and Wilson exit the residence. Det. Landry said Det. Burke, in another vehicle, stayed near 4705 Haydel Street, keeping it under surveillance. After Wilson was dropped off by Det. Polk, Det. Landry observed him walk back toward the Haydel Street residence. He alerted the “take-down team” of Wilson’s description, and the fact that Det. Polk had given him five dollars in photocopied currency.
*28 Det. Derek Burke testified that he observed defendant and Wilson enter 4705 Haydel Street. After the two left, he observed a male wearing a gray shirt leave, and then saw Wilson return to the residence.
Det. Jeff Sislo identified a photocopy of the currency used in the operation. He and other officers entered the residence after Wilson reentered. To the right of the front door was a living room where defendant and Tommie Wilson were located. Michael Moore was in the kitchen, and two other individuals were in a back bedroom. There were some crack pipes and other drug paraphernalia on a “hutch type table” in the living room. Defendant admitted that it was his residence, and was placed under arrest for the paraphernalia. Det. Sislo identified two crack pipes found in the living room, which he said had residue on them. A third crack pipe was found in the back bedroom. Det. Sislo identified a piece of clear plastic that had been found on the hutch. Also identified was a small Ziploc pbag containing a white powder residue, three spoons containing a white residue, as well as assorted paraphernalia including a cigarette lighter, two razor blades, a copper scouring pad, and a piece of wire. Defendant consented to a search of the residence, and a search of his person revealed a five-dollar bill that had been given to him by Det. Polk. Defendant informed the officers that he was not a drug dealer, that all he did was smoke crack and let other people sell and smoke crack in his house. Det. Sislo said that he saw Michael Moore discard a piece of crack cocaine in the residence — the only piece of crack cocaine recovered from the residence — and said Moore was arrested for that offense. Two other individuals were arrested for possession of drug paraphernalia. Det. Sislo admitted on cross examination that only the single five-dollar bill was recovered, and that the two other five-dollar bills and the one ten-dollar bill were never found.
It was stipulated that if Det. Harry O’Neal were called to testify he would be qualified as an expert in the identification and analysis of controlled dangerous substances, and that he would testify that he tested the two pieces of crack cocaine, and residue extracted from the crack pipes, the piece of plastic, the Ziploc baggie, and the three spoons seized from the hutch in defendant’s living room, and that all of the items were positive for the presence of cocaine.

ERRORS PATENT

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, defendant claims that the evidence is insufficient to support his conviction for possession of cocaine.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011, p. 18-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107, quoting from State v. Egana, 97-0318, p. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988).
*29 The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Defendant was convicted of possession of cocaine, a violation of La. R.S. 40:967, which makes it unlawful for any person to knowingly or intentionally | (¡possess a controlled dangerous substance. To convict for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed it. State v. Handy, 2000-0051, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 103, 104; State v. Lewis, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, 1027. Guilty knowledge is an essential element of the offense of possession of a controlled dangerous substance. State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397, writ denied, 2000-0855 (La.12/8/00), 775 So.2d 1078. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. State v. Robinson, 99-2236, p. 5 (La.App. 4 Cir. 11/29/00), 772 So.2d 966, 970. A person may be deemed to be in joint possession of a drug which is in the possession of a companion if he willfully and knowingly shares with the other the right to control it. State v. Booth, 98-2065, p. 5 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 742. However, mere presence in an area where drugs are found is insufficient to establish constructive possession. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, 1134. Factors to be considered in determining whether a defendant exercised dominion and control over drugs are: the defendant’s knowledge that illegal drugs were present in the area; the defendant’s relationship with the person in actual possession; the defendant’s access to the area where the drugs were found; evidence of recent drug use; the defendant’s proximity to the drugs; and evidence that the area was being frequented by drug users. State v. Holmes, 99-0898, p. 5 (La.App. 4 Cir. 11/8/00), 791 So.2d 669, 678; State v. Mitchell, 97-2774, p. 12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328.
|7The only crack cocaine found in the residence was the one piece discarded by Michael Moore. No drugs or drug paraphernalia were found on defendant’s person. Defendant notes his acquittal on the distribution count, opining that the jury *30 rejected Det. Polk’s testimony. Although a photocopied five-dollar bill was found on defendant’s person, it could have been the one Det. Polk gave Wilson as a tip. Defendant further argues that no evidence was adduced to prove that any of the drug paraphernalia belonged to him. However, the three spoons, two crack pipes, the piece of plastic, and the Ziploc baggie, all of which had cocaine residue on them, were found in the living room of defendant’s residence. Defendant does not suggest that cocaine residue is insufficient to convict for possession of cocaine. Det. Sislo testified that defendant, in an effort to extricate himself from the distribution charge, admitted that he smoked crack cocaine. Thus, any rational trier of fact could have found beyond a reasonable doubt that defendant knowingly and intentionally exercised dominion and control over, at the very least, one of the two crack pipes found in his living room. When police entered only defendant and Wilson were in the living room, and Wilson had only been there several minutes.
Defendant contends there were other reasonable inferences, which could have been drawn from the same circumstantial evidence. In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, the Louisiana Supreme Court commented on the circumstantial evidence-reasonable hypothesis of innocence rule, stating:
On appeal, the reviewing court “does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.” State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. (emphasis in original).
99-3342 at p. 7, 772 So.2d at 83.
Viewing all of the evidence in a light most favorable to the State, and considering that defendant admitted he smoked crack cocaine and let others smoke crack cocaine in his residence, the hypothesis of innocence posited by him — that all of the contraband belonged to others and was not subject to his dominion and control — is not sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt.
There is no merit to this assignment of error.

ASSIGNMENTS OF ERROR NOS. 2 & 3

In these assignments of error related to his sentence, defendant claims that the trial court erred in failing to adequately consider and state for the record the sentencing factors of La.C.Cr.P. art. 894.1, and in imposing an unconstitutionally excessive sentence.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it *31 makes no measurable contribution to acceptable goals of punishment, is nothing more than the | ^purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801, reversed on other grounds, State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185, writ denied, 99-2632 (La.3/17/00), 756 So.2d 324.
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an Inadequate factual basis for 'the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State *32 v. Wimberly, 414 So.2d 666, 672 (La.1982).

Id.

Before imposing sentence, the trial court noted that the presentence investigation report showed that defendant was a first felony offender, and the probation department recommended that he be given a suspended sentence and probation — the report also recommended that defendant receive substance abuse counseling and treatment. The court stated that it was following that recommendation, and then pronounced sentence. In both State v. Monette, 99 1870 (La.App. 4 Cir. 3/22/00), 758 So.2d 362 and State v. Recasner, 98-2518 (La.App. 4 Cir. 12/22/99), 750 So.2d 336, the trial court ordered a presen-tence investigation report which, it noted, recommended a suspended sentence, just as in the instant case. As in the instant case, the defendants in both those cases were first-felony offenders, and the trial court (the same court in each case, which coincidentally is the same court as in the instant case) failed to state for the record any additional aggravating or mitigating factors. This court found, however, that it was clear from the record that the courts had reviewed the presentence investigation reports, and was thus aware of all factors, both aggravating and mitigating. As in Monette and Recasner, it is clear from the record in the instant case that the trial court reviewed the presentence investigation report, was therefore aware of all aggravating and mitigating factors, and sentenced defendant accordingly.
As to the claim of excessiveness, the trial court sentenced defendant to three years at hard labor, suspended. Pursuant to La.R.S. 40:967(C), defendant was subject to imprisonment with or without hard labor for not more than five years, and a possible fine of not more than five thousand dollars. In Monette, the defendant, a first-felony offender convicted of attempted possession of cocaine, received the maximum sentence, thirty months at hard labor. The defendant had two prior municipal convictions — defendant in the instant case has one municipal arrest, but no prior convictions. As in the instant case, the sentence was suspended and the defendant was placed on probation with special conditions intended to break her drug habit. In reviewing the defendant’s excessive sentence claim in Monette, this court speculated that the trial court sentenced the defendant to the maximum sentence in order to persuade her to comply with the terms of her | ^probation and dissuade her from a life of cocaine addiction. The circumstances in the instant case are virtually identical to those in Monette. The trial court informed defendant that it expected him to participate in the weekly drug testing, attend counseling, maintain contact with his probation officer, and maintain employment. The court cautioned defendant that if he did not do those things, he would force the court to put him in jail. The trial court in the instant case tailored the sentence to promote defendant’s best interests, with an end toward allowing him to avoid any prison time if he would come to terms with his drug use by adhering to the terms of his probation. Thus, it cannot be said that the sentence was nothing more than the purposeless imposition of pain and suffering. The sentence cannot be considered unconstitutionally excessive.
In connection with these assignments of error, defendant attacks the probation revocation. Defendant’s probation was revoked at the conclusion of a status hearing, and that status hearing apparently was not recorded, although the judgment of revocation was recorded. Ordinarily, a defendant has no right of appeal from a probation revocation. State v. Dor- *33 est, 99-2902, p. 7 (La.App. 4 Cir. 1/31/01), 778 So.2d 1239, 1243. Where a defendant seeks relief from a probation revocation by an appeal, a court will generally treat it as an application for supervisory review. Id. However, in the instant case, the record contains no indication that defense counsel sought to either appeal the trial court judgment revoking his probation, or seek supervisory review of that judgment. Thus, the propriety of the probation revocation is not before this court. It can be noted that the trial court stated it would “file a motion to reconsider the sentence on [defendant’s] behalf should he successfully” obtain his G.E.D. and complete substance abuse counseling.
11/There is no merit to these assignments of error.
DECREE
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED.

. Defendant was jointly charged on the distribution count with Tommie L. Wilson. Michael C. Moore was also charged in the same bill of information with possession of cocaine.