# LANE, CORRECTIONS DIRECTOR *v.* WILLIAMS ET AL.

No. 80–1240.   Argued December 1, 1981—Decided March 23, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN and BLACKMUN, JJ., joined, *post*, p. 634.

*Michael B. Weinstein*, Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *Tyrone C. Fahner*, Attorney General, and *Herbert L. Caplan* and *Melbourn A. Noel, Jr.*, Assistant Attorneys General.

*Martha A. Mills*, by appointment of the Court, 453 U. S. 921, argued the cause and filed a brief for respondents.

JUSTICE STEVENS delivered the opinion of the Court.

In 1975, respondents pleaded guilty in Illinois state court to a charge of burglary, an offense punishable at that time by imprisonment for an indeterminate term of years and a mandatory 3-year parole term. We granted certiorari to consider whether the failure of the trial court to advise respondents of that mandatory parole requirement before accepting their guilty pleas deprived them of due process of law. We are unable to reach that question, however, because we find that respondents' claims for relief are moot.

I

On March 11, 1975, respondent Lawrence Williams appeared in Illinois state court and pleaded guilty to a single count of burglary. Before accepting the guilty plea, the trial judge elicited Williams' understanding of the terms of a plea agreement, in which his attorney and the prosecutor had

agreed that Williams would receive an indeterminate sentence of from one to two years in prison in exchange for pleading guilty. The judge informed Williams that he would impose the bargained sentence, and advised him of both the nature of the charge against him and the constitutional rights that he would waive by pleading guilty. After the prosecutor established a factual basis for the plea, Williams indicated that he understood his rights and wished to plead guilty.

At the time that Williams pleaded guilty, Illinois law required every indeterminate sentence for certain felonies, including burglary, to include a special parole term in addition to the term of imprisonment.[1] During the plea acceptance hearing, neither the trial judge, the prosecutor, nor defense counsel informed Williams that his negotiated sentence included a mandatory parole term of three years.

Williams was discharged from prison on May 20, 1976, and released on parole. On March 3, 1977, he was arrested for

---

[1] See Ill. Rev. Stat., ch. 38, ¶ 1005–8–1 (1975). The mandatory parole requirement was first imposed by the Illinois Legislature in 1972. 1972 Ill. Laws, P. A. 77–2097, § 5–8–1. At the time that Williams pleaded guilty, the mandatory parole term for the offense of burglary was three years; however, Illinois law also provided that "[t]he Parole and Pardon Board may enter an order releasing and discharging a parolee from parole and his commitment to the Department when it determines that he is likely to remain at liberty without committing another offense." § 3–3–8 (current version Ill. Rev. Stat., ch. 38, ¶ 1003–3–8 (Supp. 1980)). In 1978 the parole requirement was amended by the Illinois Legislature and reduced, for the offense in question, to two years. 1977 Ill. Laws, P. A. 80–1099, § 3.

In *People* v. *Wills*, 61 Ill. 2d 105, 330 N. E. 2d 505 (1975), cert. denied, 423 U. S. 999, the Illinois Supreme Court held that the mandatory parole term is one of the consequences of a guilty plea that must be explained to the defendant before such a plea may be accepted. The court also held, however, that its decision should not be applied retroactively; thus, during the period between January 1, 1973, when the mandatory parole requirement became effective, and May 19, 1975, when *Wills* was decided, there was no state-law requirement that a defendant be advised of the parole requirement before pleading guilty.

reasons that do not appear in the record and, on March 16, 1977, he was returned to prison as a parole violator. While in custody, Williams filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. He alleged that he "was not informed" that a mandatory parole term had attached to his sentence until two months before his discharge from prison and that "his present incarceration is therefore in violation of the Due Process Clause of the 14th Amendment to the U. S. Constitution." App. 12. Williams' petition did not ask the federal court to set aside his conviction and allow him to plead anew. It requested an order "freeing him from the present control" of the Warden and from "all future liability" under his original sentence.[2]

On January 4, 1978, the District Court found that Williams' guilty plea had been induced unfairly in violation of the Due Process Clause of the Fourteenth Amendment and ordered Williams released from custody. *United States ex rel. Williams* v. *Morris*, 447 F. Supp. 95 (1978). The court expressly "opted for specific performance" of the plea bargain "rather than nullification of the guilty plea." *Id.*, at 101. The relief granted was precisely what Williams had requested.

Williams was not, however, immediately released from custody. The District Court entered a stay to give the State an opportunity to file a motion for reconsideration. Before that stay was lifted, Williams was released from prison on a special 6-month "supervisory release term." The District Court subsequently denied the State's motion to reconsider and the State appealed.[3] While that appeal was pending,

---

[2] The petition also requested "[a]ny further relief that [the] Court deems appropriate and just in this [m]atter." App. 13.

[3] Although the denial of the motion to reconsider is dated January 27, 1978, it was not entered until February 2, 1978. Williams was released on February 1, 1978.

Williams' 6-month release term expired and he was released from the custody of the Illinois Department of Corrections.

The facts concerning respondent Southall are similar. Pursuant to a plea bargain with the prosecutor that was accepted in advance by an Illinois trial court, Southall pleaded guilty to a single charge of burglary and was sentenced to prison for a minimum period of one year and a maximum period not to exceed three years. The transcript of the plea acceptance proceeding contains no statement by the prosecutor, Southall's public defender, or the trial judge that the bargained and imposed sentence included the mandatory 3-year parole term. Like respondent Williams, Southall completed his sentence, was released on parole, and later declared a parole violator.[4] While reincarcerated, he filed a petition for habeas corpus in federal court, seeking his "immediate release." App. 65.[5] His case was consolidated in the District Court with that of respondent Williams.

The District Court found "Southall's situation to be factually indistinguishable from Williams'." 447 F. Supp., at 102. The court thus granted Southall's petition for a writ of habeas corpus. The State filed an appeal from that decision, but discharged Southall in compliance with the decision of the District Court.[6]

---

[4] Southall began serving his sentence on October 8, 1974, the date of his arrest. He was released on parole on September 22, 1975. On October 8, 1976—well within the 3-year period that Southall was told he could be subject to the control of the Illinois Department of Corrections—he was declared a parole violator "as of November 1, 1975." The record does not disclose the nature of this parole violation.

[5] Southall did not allege that he did not know of the parole requirement at the time he pleaded guilty. Southall simply alleged that "[he] was not previously aware that [he] would be detained on violation of mandatory parole." *Id.*, at 65.

[6] The District Court's original order commanding Southall's release was stayed until further order of the court, to permit the State to file the motion for reconsideration. Although the record does not contain an order terminating the stay, the Court of Appeals subsequently indicated that Southall had been released pursuant to the District Court's order. 594 F. 2d 614, 615 (CA7 1979).

The Court of Appeals reversed on the ground that respondents had failed to exhaust an available state remedy. 594 F. 2d 614 (CA7 1979). Before reaching that decision, however, the court requested the parties to submit supplemental briefs on the issue of mootness. The court concluded that the cases were not moot. It noted that Southall's mandatory parole term extended beyond the date of its decision and thus could be reinstated. While Williams' parole term had expired, the court concluded that the controversy was still alive because "there remain collateral consequences which might have lingering effects since [Williams was] found guilty of [a] violatio[n] of the mandatory parole"; that violation "would remain upon [his] recor[d] with various possible adverse consequences." *Id.*, at 615.[7] Moreover, the court found the issue to be capable of repetition, yet evading review; "[i]t is obvious that because of the short terms often remaining in the mandatory parole terms that the same issue may be expected to be raised as to other petitioners similarly situated with doubtful expectations of resolution." *Ibid.*

After the Court of Appeals had rendered its decision, respondent Southall was discharged from the custody of the Illinois Department of Corrections.[8] On remand, the District Court concluded that, as a result of an intervening decision of the Illinois Supreme Court, exhaustion of state remedies would be futile. 483 F. Supp. 775 (1980). The court again entered judgment for respondents; since they had already

---

[7] The court did not identify these collateral effects or adverse consequences. It found the situation "similar in principle," however, to that considered in *Carafas* v. *LaVallee*, 391 U. S. 234.

[8] In subsequent proceedings in the District Court, some uncertainty existed concerning the current effect of the parole term on Southall, since he had been returned to custody after committing a new offense. In its brief in this Court, however, the State declares that, as to the sentence at issue here, Southall was "totally discharged from the custody of the Illinois Department of Corrections as of October 24, 1979." Brief for Petitioner 10. Our holding that his case is moot is based on the understanding that the State may not subject Southall to any further detention or restraint as a result of the mandatory parole term at issue in this case.

been released from custody, the court simply entered an order "declaring void the mandatory parole terms." App. 39. The Court of Appeals affirmed that decision, 633 F. 2d 71 (1980), and we granted the State's petition for certiorari. *Sub nom. Franzen* v. *Williams,* 452 U. S. 914.

## II

Respondents claim that their constitutional rights were violated when the trial court accepted their guilty pleas without informing them of the mandatory parole requirement. Assuming, for the sake of argument, that the court's failure to advise respondents of this consequence rendered their guilty pleas void,[9] respondents could seek to remedy this error in two quite different ways. They might ask the District Court to set aside their convictions and give them an opportunity to plead anew; in that event, they might either plead not guilty and stand trial or they might try to negotiate a different plea bargain properly armed with the information that any sentence they received would include a special parole term. Alternatively, they could seek relief in the nature of "specific enforcement" of the plea agreement as they understood it; in that event, the elimination of the mandatory parole term from their sentences would remove any possible harmful consequence from the trial court's incomplete advice.

If respondents had sought the opportunity to plead anew, this case would not be moot. Such relief would free respondents from all consequences flowing from their convictions, as well as subject them to reconviction with a possibly greater sentence. Cf. *North Carolina* v. *Pearce,* 395 U. S. 711. Thus, a live controversy would remain to determine whether

---

[9] Cf. *Boykin* v. *Alabama,* 395 U. S. 238; *Santobello* v. *New York,* 404 U. S. 257; *Henderson* v. *Morgan,* 426 U. S. 637. We do not decide whether, to establish such a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence.

a constitutional violation in fact had occurred and whether respondents were entitled to the relief that they sought.[10]

Since respondents had completed their previously imposed sentences, however, they did not seek the opportunity to plead anew.[11]   Rather, they sought to remedy the alleged constitutional violation by removing the consequence that gave rise to the constitutional harm.   In the course of their attack, that consequence expired of its own accord.   Respondents are no longer subject to any direct restraint as a result of the parole term.   They may not be imprisoned on the lesser showing needed to establish a parole violation than to prove a criminal offense.   Their liberty or freedom of movement is not in any way curtailed by a parole term that has expired.

Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.   "Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter."   *North Carolina* v. *Rice*, 404 U. S. 244, 248.

The Court of Appeals, relying on *Carafas* v. *LaVallee*, 391 U. S. 234, concluded that respondents' parole violations had sufficient "collateral effects" to warrant an exercise of federal

---

[10] Since this relief would free respondents from collateral, as well as direct, consequences of a criminal conviction, the case would not be moot even if the previous sentence had been served and the State indicated that it would not seek a retrial.   *Carafas* v. *LaVallee, supra.*

[11] Williams' general prayer for "[a]ny further relief that [the] Court deems appropriate and just in this [m]atter"—or the fact that the District Court may have inherent power to fashion an appropriate remedy for the violation of a constitutional right—is not equivalent to a specific request by respondents to set aside their convictions.   We need not decide here whether respondents would ever be entitled to relief other than the opportunity to plead anew.   Unless respondents requested such relief, however, it surely would not be appropriate to enter an order that would subject them to the risk of retrial after their sentences had been served.

habeas corpus relief. In *Carafas* we held that an attack on a criminal conviction was not rendered moot by the fact that the underlying sentence had expired. On the basis of New York law, we noted that "[i]n consequence of [the petitioner's] conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." *Id.*, at 237 (footnotes omitted). These substantial civil penalties were sufficient to ensure that the litigant had " 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' " *Ibid.* (quoting *Fiswick* v. *United States*, 329 U. S. 211, 222). In *Sibron* v. *New York*, 392 U. S. 40, 57, we stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."

The doctrine of *Carafas* and *Sibron* is not applicable in this case. No civil disabilities such as those present in *Carafas* result from a finding that an individual has violated parole.[12] At most, certain nonstatutory consequences may occur; employment prospects, or the sentence imposed in a future criminal proceeding, could be affected. Cf. *People* v. *Halterman*, 45 Ill. App. 3d 605, 608, 359 N. E. 2d 1223, 1225 (1977).[13] The discretionary decisions that are made by an

---

[12] The State of Illinois has chosen to define narrowly the collateral civil penalties that attach even to a conviction of a criminal offense; generally, collateral consequences do not extend beyond the completion of the sentence or the release from imprisonment. See Ill. Rev. Stat., ch. 38, ¶ 1005-5-5 (Supp. 1980).

[13] In his dissenting opinion, JUSTICE MARSHALL argues that this case is not moot because a possibility exists under state law that respondents' parole violations may be considered in a subsequent parole determination. This "collateral consequence" is insufficient to bring this case within the doctrine of *Carafas*. That case concerned existing civil disabilities; as a result of the petitioner's conviction, he was presently barred from holding certain offices, voting in state elections, and serving as a juror. This case

employer or a sentencing judge, however, are not governed by the mere presence or absence of a recorded violation of parole; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation. Any disabilities that flow from whatever respondents did to evoke revocation of parole are not removed—or even affected—by a District Court order that simply recites that their parole terms are "void." [14]

Respondents have never attacked, on either substantive or procedural grounds, the finding that they violated the terms of their parole. Respondent Williams simply sought an order "freeing him from the present control" of the Warden and from "all future liability" under his original sentence; Southall sought his "immediate release" from custody. Through the mere passage of time, respondents have obtained all the relief that they sought. In these circumstances, no live controversy remains.

The Court of Appeals also held that this case was not moot because it was "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *ICC*, 219 U. S. 498, 515.

---

involves no such disability. The parole violations that remain a part of respondents' records cannot affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole. Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring. Moreover, the existence of a prior parole violation does not render an individual ineligible for parole under Illinois law. It is simply one factor, among many, that may be considered by the parole authority in determining whether there is a substantial risk that the parole candidate will not conform to reasonable conditions of parole.

Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid.

[14] The District Court's order did not require the Warden to expunge or make any change in any portion of respondents' records. Nor have respondents ever requested such relief.

That doctrine, however, is applicable only when there is "a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U. S. 147, 149; *Murphy v. Hunt, ante,* at 482. Respondents are now acutely aware of the fact that a criminal sentence in Illinois will include a special parole term; any future guilty plea will not be open to the same constitutional attack. The possibility that other persons may litigate a similar claim does not save this case from mootness.

The judgment of the Court of Appeals is vacated. The case should be dismissed as moot.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

The majority announces today that this case is moot because, in its view, no collateral consequences flow from respondents' parole revocations, which were based on findings that respondents had violated the conditions of parole terms declared void by the courts below. I dissent from this holding because I believe it is contrary to this Court's precedents and because it ignores the fact that the State of Illinois does attach collateral consequences to parole revocations, a fact recognized both in the State's brief to the Court of Appeals on the issue of mootness and in state-court decisions in analogous cases.

I

The majority recognizes that in habeas corpus challenges to criminal convictions, the case "is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York,* 392 U. S. 40, 57 (1968). This Court has consistently refused to canvass state law to ascertain "the actual existence of specific collateral consequences," and has presumed that such consequences exist. *Id.,* at 55

(discussing *United States* v. *Morgan,* 346 U. S. 502 (1954), and *Pollard* v. *United States,* 352 U. S. 354 (1957)). See also *Carafas* v. *LaVallee,* 391 U. S. 234, 237–238 (1968).

Today, the majority finds the *Carafas* doctrine inapplicable, arguing that because respondents did not seek to set aside their convictions, their situation is analogous to that of a defendant who seeks habeas corpus review to correct a sentence already served. See *North Carolina* v. *Rice,* 404 U. S. 244 (1971) *(per curiam).* Had respondents served the allegedly void mandatory parole term without incident, I might agree that *North Carolina* v. *Rice* controls and join the majority's conclusion that the consequence of the constitutional violation "expired of its own accord." *Ante,* at 631. Here, however, respondents were found to have violated the conditions of their parole. Therefore, unlike the situation in *North Carolina* v. *Rice,* respondents seek more than a mere reduction in sentence after the sentence has been completed: they seek to have the parole term declared void, or expunged, in order to avoid the future consequences that attach to parole violations. If collateral consequences do attach to parole violations, both the State and respondents have a live interest in this Court's review of the lower courts' holdings that the alleged constitutional violations rendered the guilty pleas void and that respondents were entitled to specific performance of the pleas, in the form of a declaration that the mandatory parole terms were void and should be expunged.

The existence of a live controversy in this case turns on whether collateral consequences attach to parole violations. Because this determination involves a difficult question of state law, I believe that the doctrine of *Sibron* and *Carafas* should be applied. This doctrine avoids placing a federal court in the awkward position of determining questions of state law not directly before it. By presuming the existence of collateral consequences, federal courts are not required to predict the manner in which a State may use convictions or

parole violations in future proceedings. An erroneous determination that collateral consequences do not attach not only injures the individuals challenging the constitutionality of the guilty pleas, but also hinders the State's ability to use these violations in future proceedings. Today's opinion is an unfortunate example of such an erroneous interpretation.

## II

The majority's decision is apparently based on a cursory examination of Illinois statutes. Finding no statutory civil disabilities, the majority glibly dismisses nonstatutory consequences as "discretionary decisions" that would remain whether or not the parole terms were declared void or expunged. *Ante*, at 632–633.[1] This reasoning has no basis in

---

[1] The majority makes a cryptic reference to the fact that respondents did not request the District Court to expunge or make any change in their records. *Ante*, at 633, n. 14. The failure to make this request is easily explained on several grounds and is irrelevant to the question whether this case is moot. The respondents did request that the District Court "expunge" the parole terms on which the violations were based. This "expungement" would have the effect of removing respondents' parole-violation status and would relieve respondents of the collateral consequences flowing from this status. Any further "expungement" that respondents might obtain should be requested in future state proceedings. The State of Illinois has a very limited expungement procedure that would not cover the expungement to which the majority apparently refers. See Ill. Rev. Stat., ch. 38, ¶ 206–5 (Supp. 1980) (person, not convicted of any previous criminal offense, who is acquitted or released without conviction may petition the court for expungement of arrest records).

Furthermore, the State of Illinois has no procedure to expunge convictions that are later reversed or vacated on appeal, but this fact, or the failure of a habeas petitioner to request that a federal district court accord him relief that is unavailable under state law, would hardly render moot a habeas petition to set aside a conviction unconstitutionally obtained. The Illinois courts may not consider a reversed conviction in aggravation of sentence, despite the fact that the records of this conviction have not been officially "expunged." See, *e. g., People* v. *Wunnenberg*, 87 Ill. App. 3d 32, 409 N. E. 2d 101 (1980); *People* v. *Chellew*, 20 Ill. App. 3d 963, 313 N. E. 2d 284 (1974).

Illinois law and appears to derive from nothing more than judicial intuition.

Several collateral consequences attach to parole violations under Illinois law.[2] First, a sentencing judge may consider parole violations in aggravation of sentence. The majority makes the unwarranted assumption that declaring void the parole term upon which a violation is based has no effect because a sentencing judge would consider the conduct underlying the violation, and not the violation itself, in deciding whether to enhance a sentence. However, as the majority recognizes, there is no way for this Court to determine the basis for respondents' parole revocation. Under Illinois law, the Prisoner Review Board is given substantial discretion in setting conditions of parole. See Ill. Rev. Stat., ch. 38, ¶ 1003-3-7 (Supp. 1980).[3] Conditions of parole may prohibit

---

[2] Of course, the existence of express statutory civil disabilities is not a prerequisite to holding that a habeas challenge to a criminal conviction is not moot. See, e. g., Sibron v. New York, 392 U. S. 40, 54-57 (1968) (discussing Fiswick v. United States, 392 U. S. 211 (1946)); United States v. Morgan, 346 U. S. 502 (1954); Pollard v. United States, 352 U. S. 354 (1957)).

[3] Paragraph 1003-3-7 provides:

"(a) The conditions of parole or mandatory supervised release shall be such as the Prisoner Review Board deems necessary to assist the subject in leading a law-abiding life. The conditions of every parole and mandatory supervised release are that the subject:

"(1) not violate any criminal statute . . . ; and

"(2) refrain from possessing a firearm or other dangerous weapon.

"(b) The Board may *in addition to other conditions* require that the subject:

"(1) work or pursue a course of study or vocational training;

"(2) undergo medical or psychiatric treatment, or treatment for drug addiction or alcoholism;

"(3) attend or reside in a facility established for the instruction or residence of persons on probation or parole;

"(4) support his dependents;

"(5) report to an agent of the Department of Corrections;

"(6) permit the agent to visit him at his home or elsewhere to the extent necessary to discharge his duties . . ." (emphasis added).

conduct that is otherwise innocent and may affirmatively require the parolee to engage in specified work or rehabilitation programs. Parole may be revoked upon a finding that the parolee has violated *any* of these parole conditions. See Ill. Rev. Stat., ch. 38, ¶1003–3–9 (Supp. 1980); Illinois Prisoner Review Board, Rules Governing Parole 9–10, 13–16 (1979), 3 Ill. Register 144, 162–166 (1979). Therefore, conduct giving rise to a parole violation may be completely innocuous but for the fact that it was prohibited or required as a condition of parole, and it may be entirely irrelevant to a sentencing decision once the parole term is declared void.

Moreover, it is not clear under Illinois law whether a sentencing judge would consider the conduct underlying a parole violation, even if the conduct is not otherwise innocent, where the parole term itself is declared void. In a similar context, the Illinois appellate courts have held that trial courts may not consider a reversed conviction in aggravation of sentence, even where the court, in remanding for a new trial, noted that the evidence was sufficient to support the verdict beyond a reasonable doubt and the matter was never retried. See, *e. g.*, *People* v. *Chellew*, 20 Ill. App. 3d 963, 313 N. E. 2d 284 (1974). Cf. *People* v. *Wunnenberg*, 87 Ill. App. 3d 32, 34, 409 N. E. 2d 101, 103 (1980). The Illinois courts have also held that review of probation revocation is not rendered moot merely because the defendant has served his entire sentence. See *People* v. *Halterman*, 45 Ill. App. 3d 605, 608, 359 N. E. 2d 1223, 1225 (1977) (challenge to probation revocation not moot because "the fact that the defendant has had his probation revoked might be submitted to another judge for his consideration in sentencing the defendant if he has the misfortune of again being convicted of some crime"). These cases do not conclusively demonstrate that a judge would not consider the conduct underlying the violation

---

See also Illinois Prisoner Review Board, Rules Governing Parole 9–12 (1979), 3 Ill. Register 158–160 (1979).

of a void parole term in aggravation of sentence. However, they cast serious doubt on the validity of the majority's assumption to the contrary. Furthermore, the State argued to the Court of Appeals that the case was not moot because the State "is deeply interested in whether or not it can use the parole violation status of [respondents] for sentencing purposes should they ever again come into contact with the criminal justice system." Additional Memorandum for Appellants in Nos. 78–1321, 78–1322, 78–1323, 78–1380 (CA7), p. 5 (Mem. to Court of Appeals). This argument at least implies that the State would not use this status for sentencing purposes after a court had declared the parole terms void.

Second, the majority completely overlooks an important collateral consequence that attaches to parole violations should the respondents ever have the misfortune of returning to prison. In rules promulgated by the Prisoner Review Board pursuant to Ill. Rev. Stat., ch. 38, ¶¶ 1003–3–1, 1003–3–2 (Supp. 1980), the State of Illinois has set forth fairly specific criteria upon which parole may be denied. See Illinois Prisoner Review Board, Rules Governing Parole (1979), 3 Ill. Register 144–169 (1979). The Rules provide in relevant part:

"V. BASIS FOR DENYING PAROLE
In accordance with statute, the Board shall not parole a candidate if it determines that:
  "A. There is a substantial risk that the candidate will not conform to reasonable conditions of parole based on one or more of the following factors:
  "1. Existence of prior adult felony convictions (mitigating as well as aggravating factors to be considered).
  "2. An apparent pattern of aggressive or assaultive behavior (misdemeanor offenses also considered).
  "*3. Prior adult parole or probation violations within five years prior to the present offense.*
  "4. Refusal to be supervised on parole.

"5. No means of financial support or no place of residence. (Continuance not to exceed six months to seek resolution of problem.)

"6. A psychiatric examination determines the candidate is not likely to conform." Illinois Prisoner Review Board, Rules Governing Parole 6 (1979), 3 Ill. Register 153 (1979) (emphasis added).

Under these rules, parole may be denied simply on the basis of a prior parole violation; the conduct underlying the parole violation is apparently irrelevant unless it falls within one of the other criteria listed in that section. We have no reason to assume that the conduct underlying respondents' violations would fall within one of the other factors, or that the Prisoner Review Board would deny parole based on a parole violation notwithstanding the fact that the parole term had been declared void. In fact, the State argued to the Court of Appeals that the case was not moot because respondents "still have a substantial stake in ensuring that their parole terms are, indeed, expunged," because the parole violations would be burdensome if respondents were ever again considered for parole. Mem. to Court of Appeals 5. See also *United States ex rel. Howell* v. *Wolff*, No. 78 C 951 (ND Ill. Aug. 9, 1978) (unpublished opinion of Judge Leighton, reprinted in App. to Mem. to Court of Appeals) (finding case not moot due to potential burden on future parole decision from parole-violation status).

## III

Today's decision, in which the majority undertakes a cursory and misleading examination of state law, starkly demonstrates the wisdom of applying the doctrine of *Carafas* and *Sibron* to the determination whether a State attaches collateral consequences to parole violations. I would apply that doctrine, presume the existence of collateral consequences, and reach the merits of this case. Even if the doctrine of

*Carafas* and *Sibron* does not apply, an examination of state law reveals that the majority is wrong in concluding that actual collateral consequences do not attach under state law; there are sufficient collateral consequences flowing from parole-violation status that both the State and the respondents have a live interest in this Court's resolution of the constitutional question. Therefore, I dissent from the majority's conclusion that this case is moot.