# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-3083

TARA GOLD RESOURCES CORP.,

*Petitioner*,

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

Petition for Review of an Order of the
Securities and Exchange Commission

ARGUED APRIL 4, 2012—DECIDED MAY 2, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. A corporation that wants its shares to be traded on an exchange or through broker-dealers that make national markets must register the securities under §10 of the Securities Act of 1933, 15 U.S.C. §77j. See 15 U.S.C. §78*l*(a). (Section 78*l*(a) is §12(a) of the Securities Exchange Act of 1934; the 1933 and 1934 Acts have coordinated provisions.) Section 13(a) of the 1934 Act, 15 U.S.C. §78m(a), requires any issuer to

which §12(a) applies to file periodic reports under rules established by the Securities and Exchange Commission. The Commission's rules require quarterly reports plus comprehensive annual reports; among other things, the issuer's financial statements must be audited.

Tara Gold Resources Corp. registered an issue of securities under §10 of the 1933 Act and persuaded some broker-dealers to make markets in them, which brought §§ 12(a) and 13(a) of the 1934 Act to bear. In 2002 Tara Gold fell behind with its quarterly filings. Staff of the SEC told it to get these reports current; Tara Gold promised to do so but did not keep its promise. After waiting eight years, during which Tara Gold fell farther and farther behind, the Commission opened a formal proceeding. An ALJ took evidence in the summer of 2010 and found that these reports were missing: "two annual reports (for the calendar years ended 2008 and 2009) and eight quarterly reports (for the periods ended March 31, June 30, and September 30, 2008; March 31, June 30, and September 30, 2009; and March 31 and June 30, 2010)." Tara Gold had not filed its 2007 annual report until July 2, 2010, and told the SEC that it did not have the ability to pay an auditor to certify more recent financial statements—something investors surely would want to know. The SEC revoked Tara Gold's registration, see §12(j), 15 U.S.C. §78*l*(j), and trading in its shares came to a halt. See 1934 Act Release No. 64897, 2011 SEC LEXIS 2455 (July 18, 2011).

Tara Gold took two steps in response. First, it filed a petition for judicial review under §25(a)(1) of the 1934

Act, 15 U.S.C. §78y(a)(1). The Commission used the approach adopted in *Gateway International Holdings, Inc.*, 1934 Act Release No. 53907, 2006 SEC LEXIS 1288 (May 31, 2006). Tara Gold maintains that *Gateway* is inconsistent with the statute or, if valid, has been misapplied. Second, Tara Gold filed a new registration statement under §10 of the 1933 Act. A registration statement becomes effective 60 days after filing unless the Commission blocks it. The SEC did not block it—though its staff sent Tara Gold a 12-page letter containing 48 observations, many of which flagged material deficiencies. The Commission's revocation decision thus lasted just a little more than two months. Tara Gold *still* has not caught up on its quarterly and annual reports, but the SEC has not commenced a new proceeding to re-revoke the stock's registration.

The SEC has asked us to dismiss as moot Tara Gold's petition for judicial review. If we were to reverse the Commission's revocation order, that would restore the securities to registered status. Because they are now registered anyway, the Commission contends, nothing is at stake in the litigation. Tara Gold responds that there is a practical difference: before the Commission's revocation order, at least one broker-dealer made a market in its stock. Today, however, its shares do not trade through any market maker. To commence trading in any newly registered stock, a broker-dealer needs approval from the Financial Industry Regulatory Authority. When a potential market maker sought FINRA's assent, it noted the many comments that the SEC's staff had made and asked for further informa-

tion. Instead of supplying what FINRA wanted, Tara Gold has pursued this litigation.

Tara Gold believes that, if we were to set aside the SEC's revocation decision, FINRA would no longer be interested in the comments the SEC's staff made following Tara Gold's new registration statement, and its shares would start trading again. But whether litigation is moot depends on whether the judicial branch can afford relief. The only relief Tara Gold seeks is against the SEC. The Financial Industry Regulatory Authority is not a party to this proceeding. Nothing we could do would oblige FINRA to allow trading to resume. Nothing we could do would expunge the staff's comment letter, let alone the SEC's opinion; a judicial decision would affect only the agency's order. Nor could a judicial decision in this case prevent FINRA from thinking, as it evidently did, that Tara Gold's failure to come current in its filings renders it inappropriate for broker-dealers to make a public market in Tara Gold's securities. Tara Gold has not cited any decision, by any court, holding that a case or controversy continues even after the effect of a revocation order has been undone by the stock's re-registration. We do not see a good reason to create such a precedent.

Courts sometimes say that the collateral consequences of a decision prevent mootness. See, e.g., *Carafas v. LaVallee*, 391 U.S. 234 (1968); *Pollard v. United States*, 352 U.S. 354 (1957). This is why a court will review a criminal conviction even after the defendant has finished serving the sentence: the judgment of conviction

has legal effects, such as preventing a felon from voting or serving on a jury. But with the single exception of a challenge to a criminal conviction, collateral consequences are not presumed; they must be established by proof. See *Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998); *Lane v. Williams*, 455 U.S. 624 (1982). And *Spencer* adds that adverse practical consequences don't suffice.

Spencer served his sentence, was released on parole, and was returned to prison following a conclusion that he had violated the conditions of parole. Before a court could resolve his challenge to that decision, his sentence expired and he was released again. He acknowledged that parole revocation lacks legal consequences such as inability to vote, but he maintained that, if he got into trouble once more, judges and parole officials would look askance at a person whose parole has been revoked—just as Tara Gold contends that FINRA looks askance at issuers whose registration has been revoked (even after the shares have been re-registered) and have received adverse comments from the SEC's staff. The Supreme Court deemed this inadequate to preserve a live controversy, 523 U.S. at 14–16, even though Spencer already *had* got into trouble again and was serving a new sentence, from which he would eventually seek release on parole. The Justices observed that the treatment of the prior revocation was a matter of discretion rather than legal entitlement.

One of Spencer's problems was that, even if a court had found a legal flaw in the parole revocation, the *facts* underlying the revocation would remain and could

influence how future judges and parole officials assessed his prospects for release. Just the same is true here. Suppose we were to agree with Tara Gold that the SEC made a legal error in *Gateway*. That would not change the fact that Tara Gold was (and remains) behind in filing reports. Both FINRA and potential market makers could, and should, consider that fact when deciding whether to allow public markets in Tara Gold's stock. Nothing this court could do would affect the propriety of basing future action on the admitted fact of Tara Gold's long-term failure to fulfil its legal duties. Nor could this court do anything about the existence of the 48-point letter the SEC's staff wrote. The judicial arsenal does not include a writ of erasure that blots documents from existence. Broker-dealers and FINRA may, and should, consider the staff's points when deciding what to do.

*Spencer* and *Lane* hold that the effects of old sanctions on how public officials exercise their discretion in the future are not the sort of "collateral consequences" that create an ongoing case or controversy under Article III, when the old sanction has expired of its own force. The SEC's revocation expired when Tara Gold re-registered its securities. What potential market makers and FINRA make of these events is a matter for their discretion. We therefore dismiss the petition for review as moot.