**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 10, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RONALD F. ROMERO,

　　　　Petitioner-Appellant,

v.

DONNA K. GOODRICH, Warden,
Gallup McKinley Adult Detention
Center, and PUEBLO OF NAMBÉ,

　　　　Respondents-Appellees.

No. 11-2159

(D. of N.M.)

(D.C. No. CIV-09-00232-RB-DJS)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

Ronald F. Romero, an enrolled member of the Pueblo of Nambé, through

counsel filed a petition for a writ of habeas corpus pursuant to 25 U.S.C. § 1303

to seek relief after a tribal court conviction. The district court dismissed

Romero's petition as moot after the Pueblo commuted Romero's sentence to time

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

served and released him from tribal custody. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

# I. Background

In February of 2007, Romero was arrested following a domestic disturbance. He was convicted in Nambé Tribal Court on numerous charges after a bench trial. Romero was not represented by counsel. Although none of the counts carried a sentence greater than one year in prison, Romero was ordered to serve several of his sentences consecutively, resulting in a total of eight years' imprisonment, in addition to $7,050 in fines and fees.

Romero unsuccessfully appealed his conviction to the Southwest Intertribal Court of Appeals. He then filed a petition for habeas corpus pursuant to 25 U.S.C. § 1303, the Indian Civil Rights Act of 1968 (ICRA), alleging the Nambé Tribal Court imposed an excessive sentence and violated his constitutional rights.

The matter was referred to a magistrate judge, who recommended Romero's petition be granted on the grounds his sentence was excessive under 25 U.S.C. § 1302. Shortly thereafter, a grand jury indicted Romero for assaulting a federal officer during his incarceration for the tribal convictions. After learning of this charge and the lengthy sentence Romero faced, and despite having itself imposed a lengthy sentence on Romero, the Nambé Tribal Court *sua sponte* commuted Romero's sentence, including his fines, to time served. The Pueblo then moved that the district court dismiss Romero's habeas petition as moot.

The magistrate judge withdrew his earlier recommendation, issuing a new recommendation that the petition be dismissed as moot. The district court adopted the recommendation, and this appeal followed.

## II.  Discussion

The sole question presented in this appeal is whether the district court erred by dismissing Romero's habeas corpus petition as moot.[1] We review questions of mootness de novo. *Shawnee Tribe v. United States*, 423 F.3d 1204, 1212 (10th Cir. 2005) (internal citation omitted).

Article III's case-or-controversy requirement applies at all stages of litigation. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A case or controversy requires the parties to have a personal stake in the outcome of the litigation; among other things a petitioner's injury must be capable of redress by a favorable ruling. *Id*. at 477–78. When circumstances change, extinguishing a

---

[1] The parties also vigorously dispute the nature of the habeas remedy under § 1303. Under that provision, "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." The provision contains no procedural requirements or restrictions, unlike other federal habeas statutes. *See*, *e.g.*, 28 U.S.C. § 2241. Romero urges that the same legal principles applicable to other federal habeas actions also apply to § 1303 actions. The Pueblo disagrees, arguing that absent express statutory authorization, § 1303 grants federal courts only common-law habeas corpus powers, enabling them to release prisoners held under an illegal sentence, but not to vacate their convictions. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting the traditional function of a writ of habeas corpus is to secure release from illegal detention). While an intriguing question, we need not reach it because Romero's petition is moot.

party's interest in the case, it becomes moot and is subject to dismissal. *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009) (internal quotations omitted). A habeas petitioner's release from custody is one such change in circumstance. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

The magistrate judge concluded that Romero's petition was moot for two reasons. First, Romero did not request relief from his conviction or its consequences, only his illegal detention. Second, the magistrate judge found Romero failed to articulate sufficient collateral consequences stemming from his conviction to demonstrate a continuing case or controversy.

The district court adopted the magistrate judge's recommendation and dismissed Romero's petition as moot.

### A. Relief Requested

Romero acknowledges that he did not specifically request his conviction be vacated, but argues this request was implied by his numerous challenges to the legality of his conviction. He contends the district court was empowered to vacate his conviction regardless of how he worded his request for relief because federal courts have broad powers to afford relief for habeas petitions. *See Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). Romero thus argues the district court erred in concluding it could not grant him relief.

The Pueblo contends Supreme Court case law prevents us from expanding Romero's claim for relief, pointing to *Lane v. Williams,* 455 U.S. 624, 629–30

(1982). In *Lane*, the petitioners argued their trial courts failed to advise them of a mandatory parole requirement before accepting guilty pleas. *Id.* While their appeals were pending, the petitioners' sentences expired and they were released. *Id.* The Court found the appeals moot for two reasons: first, the petitioners had not requested relief from their allegedly unconstitutional convictions, only their detentions. *Id.* at 631. The Court refused to imply a request to vacate because this could subject them to unintended consequences, including new trials. *Id.* at n.11. Second, the Court refused to presume collateral consequences for parole revocations and found the appellants did not demonstrate sufficient collateral consequences to avoid mootness. *Id.*

Romero's situation is only superficially similar to *Lane*. Like the petitioners there, Romero did not specifically request that his conviction be vacated. But he did request a new trial in tribal court. Granting such relief would necessarily require the district court to vacate his conviction. *See, e.g.,* Fed. R. Crim. P. 33 (establishing that upon a defendant's motion for a new trial, a court may vacate the judgment and grant a new trial). Vacating his conviction could subject Romero to a new trial and new sentence even though he has fully served his original sentence, but Romero was apparently willing to accept this risk given his pursuit of this appeal.

Accordingly, we disagree with the district court that Romero's habeas petition did not request relief from conviction. We need not resolve this question

definitively because his petition still fails: he did not demonstrate he preserved his arguments about collateral consequences stemming from his conviction.

### B. Collateral Consequences

To preserve a habeas petition after his release, a petitioner must demonstrate a specific, continuing injury—a collateral consequence—of his conviction to show a continuing case or controversy. *Carafas*, 391 U.S. at 237–38. Courts usually presume the existence of collateral consequences in the habeas context. *See Spencer*, 523 U.S. at 10–11 (noting but casting doubt on the validity of this presumption). But the Supreme Court instructs us that we should decline to presume collateral consequences in certain situations, several of which are applicable here. *Id*. at 12–13 (declining to presume collateral consequences for parole violations).

The magistrate judge found the collateral consequences Romero alleged were vague and called into question the application of this presumption for tribal convictions. The magistrate judge requested briefing on the issue, asking Romero either to articulate why the presumption should apply or to specify the collateral consequences of his conviction. Romero's response merely noted that, in *Sibron v. New York*, 392 U.S. 40, 55 (1968), the Court ceased inquiring into the specific consequences of convictions. The bulk of his response argued for the existence of specific consequences. The magistrate judge found Romero failed to argue for the presumption and refused to apply it.

Romero did not object to the magistrate judge's failure to apply the presumption. He argues on appeal that the presumption of collateral consequences should apply because most criminal convictions carry collateral consequences. *See Spencer*, 523 U.S. at 12.

This circuit has adopted a firm-waiver rule, which bars appellate review of legal and factual questions when a party fails to make a timely objection to a magistrate judge's findings. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005). The only exceptions to this rule are when "(1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review." *Id.* (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

The first exception does not apply because Romero is represented by counsel. This court typically considers several factors when deciding whether the second exception applies, including a litigant's effort to make a timely objection, his explanation for failing to comply, and the importance of the issues raised. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

None of these factors applies here. Romero filed objections to the magistrate judge's findings, but neglected to object to the finding regarding the presumption of collateral consequences. Romero also does not attempt to explain or excuse his failure to lodge such an objection.

As for the importance of the issues Romero raises, analysis of this factor is similar to plain error review. *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008). Romero thus must show that the magistrate judge's failure to apply the presumption of collateral consequences was "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (internal quotation omitted).

Romero does not make this showing. He argues merely that courts usually presume collateral consequences, but fails to explain why the magistrate judge's conclusion that the presumption should not apply to tribal convictions was even an error, let alone one that is plain or that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. Because Romero cannot establish that either of the firm-waiver exceptions applies, we conclude Romero has waived appellate review of this argument.

As to the specific collateral consequences Romero alleges on appeal, they too are insufficient to save his petition. Before the district court, Romero asserted that his conviction can be used to enhance a sentence in a future case and that he may be impeached with this conviction in a future proceeding. He asserts another consequence on appeal—that his conviction deprives him of eligibility for tribal office and for employment in tribal casinos.

*Sentence Enhancement.* As for the possibility of a sentence enhancement, *Spencer* found this too speculative to satisfy the case-or-controversy requirement.[2] 523 U.S. at 15. Romero argues that enhancement is not speculative in his case, as his tribal and other prior convictions were cited as grounds for an upward departure at his sentencing for assault on a federal officer. *See United States v. Romero*, 442 F. App'x 399 (10th Cir. 2011).

Romero did not raise this argument before the district court. Although Romero was sentenced for his assault charge in November 2010, after the parties briefed the issues of mootness and collateral consequences, the magistrate judge did not make his recommendation until April 2011, and the district court did not adopt that recommendation until July 2011. Romero thus had ample time to file a supplemental brief notifying the court of this development but failed to do so.

Nor did he object to the magistrate judge's finding that sentence enhancement was not a collateral consequence of his conviction. Because he did not do so, the firm-waiver rule again bars our review of this argument. As discussed previously, Romero is represented by counsel, he timely objected to the magistrate judge's findings in other respects, and he offers no excuse for his

---

[2] This would be particularly true for tribal convictions, which are excluded when calculating a defendant's criminal history category under the United States Sentencing Guidelines and are considered only at the sentencing court's discretion when it determines whether to vary from the guidelines. *See* USSG §§ 4A1.1(b) cmt. n.2, 4A1.3(a)(2)(A).

failure to object to this finding. *See Casanova*, 595 F.3d at 1123. He also cannot establish the fundamental importance of this argument because he fails to show the district court committed plain error. *Duffield*, 545 F.3d at 1238. Even if Romero's enhanced sentence for assault was a collateral consequence of his tribal conviction, any error the district court committed by failing to recognize this was not plain because Romero never informed the district court of this consequence. Thus, neither of the exceptions to the firm-waiver rule applies to this argument.

*Future Impeachment. Spencer* also precludes reliance on Romero's next claimed consequence, the possibility of impeachment. 523 U.S. at 15–16. *Spencer* concluded, once again, that this consequence was "purely a matter of speculation." *Id*. at 16. As for Romero's arguments about his eligibility for tribal office or tribal employment, he did not raise these below and is barred from asserting them here. *See United States v. Windrix*, 405 F.3d 1146, 1156 (10th Cir. 2005) (declining to address arguments not raised below when the appellant did not argue any special circumstances justified such review).

Romero also does not dispute the final basis for the magistrate judge's recommendation: that his long history of prior criminal convictions demonstrates that he long ago forfeited any civil liberties his conviction might otherwise deprive him of. The magistrate judge reasoned that even if the district court could vacate Romero's sentence, this would not free him from any of the collateral consequences he identifies. *See Malloy v. Purvis*, 681 F.2d 736 (11th

Cir. 1982) (dismissing habeas petition as moot where petitioner already suffered collateral consequences from prior convictions).

Romero did not object to this conclusion before the district court and does not object on appeal. For this and the foregoing reasons, Romero fails to demonstrate sufficient collateral consequences from his tribal conviction to save his habeas petition.

## III. Conclusion

Romero did not demonstrate sufficient collateral consequences to establish a continuing case or controversy since he is no longer serving his tribal sentence. Accordingly, we AFFIRM the order of the district court dismissing Romero's petition as moot, and we GRANT the request to proceed in forma pauperis.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge