GINSBURG, Senior Circuit Judge,
concurring:
I join the decision of the Court but, with respect to its holding Mr. Hamdan’s appeal of his criminal conviction by military commission is not moot, I do so only because precedent so dictates. I write separately to explain the unfortunate state of that precedent, which requires us to review the conviction of a man long since transferred to Yemen who, even if his conviction were overturned and he were to hear of it, would not be affected in any way by the result. Because today’s decision has no actual consequence for Mr. Hamdan, his case is moot in fact, though, curiously, not in law.
The Supreme Court “presumes” the appeal of a criminal conviction is not moot unless “it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.” Sibron v. New York, 892 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); see United States v. Juvenile Male, — U.S. -, 131 S.Ct. 2860, 2864, 180 L.Ed.2d 811 (2011) (per curiam) (“When the defendant challenges his underlying conviction, this Court’s cases have long presumed the existence of collateral consequences”). The Government concedes, as Hamdan’s counsel contends, that it cannot show there is “no possibility” Hamdan’s conviction will have a collateral legal consequence for him. The parties’ mutual desire to have the court decide this case on its merits is of no moment, however; an Article III court has an “independent obligation to be sure [it] ha[s] jurisdiction,” High Plains Wireless, LP v. FCC, 276 F.3d 599, 605 (D.C.Cir.2002), which here requires us to determine whether the case has become moot on appeal.
A criminal conviction may and often does have consequences beyond the penalties imposed in the sentence. In Sibron, the Court held the defendant’s appeal of his conviction was not moot, even though his sentence had expired during the pendency of the appeal, because that conviction, left undisturbed, could increase his sentence if he were later to be convicted of another crime. 392 U.S. at 56, 88 S.Ct. 1889; accord United States v. Morgan, 346 U.S. 502, 512-13, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (“Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties”). Similarly, in Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Court concluded that a continuing civil disability stemming from a criminal conviction, such as a bar to voting in state elections or to serving as a juror, also keeps a criminal appeal from becoming moot. Even an adverse immigration consequence, including a bar on re-entering United States, may suffice to keep a case alive and hence to preserve appellate jurisdiction. See, e.g., United States v. Hamdi, 432 F.3d 115, 121 (2d Cir.2005).
Although, in considering a challenge to a *1254 criminal conviction,* “the Court [has] abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they exist[ ],” Sibron, 392 U.S. at 55, 88 S.Ct. 1889, the presumption is rebutted if the alleged collateral consequences are foreclosed as a matter of law. In Perez v. Greiner, 296 F.3d 123 (2d Cir.2002), the Second Circuit held moot the direct appeal of a criminal conviction on the ground there was “no material possibility that [the defendant] will suffer collateral consequences on the basis of the challenged conviction,” id. at 125. The defendant in that case had been deported when his appeal was heard and was ineligible to reenter the country because of an earlier conviction. With the defendant “permanently barred from this country on a wholly separate ground, the currently challenged ... conviction [could] have no meaningful effect on his admissibility and hence [could not] serve as a possible collateral consequence.” Id. at 126.
Hamdan and the Government each point to a collateral consequence of Hamdan’s conviction. Hamdan claims his conviction for material support of terrorism makes him subject to permanent mandatory exclusion from the United States. See 8 U.S.C. § 1182(a)(3)(B)(i)(D, (V). For its part, the Government claims Hamdan’s conviction may expose him to an enhanced sentence if in the future he commits a new offense and is tried therefore in a civilian or military court of the United States. See Dep’t of Defense, MaNüal for MilitaRY Commissions, Rule 1001(b)(1)(A) (2010) (“The trial counsel may introduce [in a sentencing proceeding] evidence of [prior] military or civilian convictions, foreign or domestic, of the accused”); 18 U.S.C. § 3553(a)(1) (sentencing court shall consider “the history and characteristics of the defendant”). The adverse collateral consequence raised by Hamdan is foreclosed as a matter of law. The adverse collateral consequence posed by the Government is so far-fetched that the application of the Sibron presumption in this case risks making our opinion merely advisory.
The adverse immigration consequence alleged by Hamdan is impossible as a matter of law because Hamdan is already subject to mandatory exclusion from the United States regardless whether his conviction stands. The Immigration and *1255 Naturalization Act (INA) provides: “Any alien who ... has engaged in a terrorist activity ... is inadmissible.” 8 U.S.C. § 1182(a)(3)(B)(i)(I). The Government provided overwhelming evidence, none of which Hamdan bothers to dispute, demonstrating that he engaged in “terrorist activity” within the meaning of the INA, including the provision of material support for terrorism.* The INA makes Hamdan inadmissible not for his conviction, which we reverse,* but rather for having knowingly supported terrorist activities, a historical fact we cannot reverse. Cf. Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 135, 3 L.Ed. 162 (1810) (“The past cannot be recalled by the most absolute power”). Nor is it conceivable that an immigration court, which applies a standard of proof much more favorable to the Government than does a military commission, compare 8 U.S.C. § 1229a(c)(2) (“In the proceeding [for deciding whether an alien is admissible,] the alien has the burden of establishing ... the alien is clearly and beyond doubt entitled to be admitted”), with 10 U.S.C. § 949Í (4) (in a military commission “the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the United States”), would find Hamdan in fact had not provided any of the five types of material support for which he was convicted and therefore may be admitted to the United States.* Because Hamdan is already barred from entering the United States due to his past involvement in terrorism, his current conviction has no in *1256 eremental effect upon his admissibility and hence the immigration consequence he proffers cannot serve as a basis for our jurisdiction. Cf. Gul, 652 F.3d at 19-20 (where detention at Guantanamo Bay, rather than designation as enemy combatant, is the ground for inadmissibility, immigration consequence of challenge to designation “too speculative to sustain the exercise of our jurisdiction”).
The only other collateral consequence alleged is the Government’s preposterously hypothetical prospect of an enhanced sentence if Hamdan is in the future convicted in the United States for committing another crime. The Supreme Court held in Sibron that the hypothetical future sentencing enhancement is sufficient to support the presumption that the conviction being appealed will have an adverse collateral consequence and hence to keep the appeal from being moot. Sibron, 392 U.S. at 56, 88 S.Ct. 1889. Subsequent cases, however, cast doubt upon the continuing validity of Sibron as applied to this case. In Spencer v. Kemna the Court declined to extend the Sibron presumption to the appeal of a parole revocation because any collateral consequence in a future sentencing “was contingent upon [the defendant again] violating the law, getting caught, and being convicted.” 523 U.S. 1, 15, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); see also Lane v. Williams, 455 U.S. 624, 633 n. 13, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (“The parole violations that remain a part of respondents’ records cannot affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole. Respondents themselves are able — and indeed required by law — to prevent such a possibility from occurring”).
That is, although in Sibron a conviction was presumed to have adverse consequences for the defendant in a future hypothetical sentencing, in Spencer the hypothetical sentencing consequences of a defendant’s parole revocation were held insufficient to keep his case from being moot because such consequences are speculative and depend upon future unlawful conduct by the defendant. Both holdings were categorical; they did not depend at all upon the particular defendant’s probability of recidivating. Therefore, the defendants’ future crimes, apprehension, and conviction were equally speculative in both cases. It is entirely unclear, therefore, how the hypothetical sentencing consequences of a parole revocation could be too speculative to support a finding of collateral consequences, while the hypothetical sentencing consequences of a conviction could be concrete and certain enough to support the presumption of collateral consequences, and hence Article III jurisdiction, in all criminal appeals.
Nonetheless, “[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.” Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Accordingly, because Hamdan’s case is a direct appeal of his criminal conviction rather than review of a parole revocation as in Spencer, the Court is bound to hold the Sibron presumption applies and therefore the hypothetical future sentencing consequences of Hamdan’s conviction are sufficient to keep his appeal from being moot.
Finally, I note that although this is an “appeal of a criminal conviction,” we have strayed far from the familiar territory of Sibron and its progeny, which deemed sentencing consequences the antidote to mootness. The criminal conviction in each of those cases was entered in a regularly *1257 constituted civilian court, and the criminal defendant served time in a domestic prison before being released into the sovereign territory of the United States. As such, upon his release the defendant was subject to the criminal laws of the United States and of the State in which he was located. Recidivism being common in the United States, it is unfortunately reasonable to suppose such a defendant may again be convicted for violating a state or federal law.* By contrast, Hamdan is presumably in Yemen and is certainly not in the United States; so far as the record shows, he has never entered the United States nor expressed any desire to do so; and he is barred, both legally and physically, from entering the United States. As a result, the only possible future sentencing consequence of his conviction by a military commission would be through extraterritorial application of our criminal law to a federal crime yet to be committed, or through a successive prosecution in a military commission for a future violation of the law of war. It is, to say the least, far more speculative that Hamdan may find himself again being sentenced in the United States than it is an domestic criminal may recidivate and find himself before a domestic criminal court.

 Contrary to the Court’s reading of the relevant precedents, Ct. Op. at 12, the Supreme Court does not distinguish between direct review of a criminal conviction and a collateral attack on a criminal conviction, by way of a petition for a writ of habeas corpus or otherwise. The Supreme Court has, on several occasions, indicated the Sibron presumption applies in a collateral proceeding for post-conviction relief. See, e.g., Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (holding habeas challenge to criminal conviction not moot due to "collateral consequences” of conviction); Lane v. Williams, 455 U.S. 624, 634, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (Marshall, J., dissenting) (“The majority recognizes that in habeas corpus challenges to criminal convictions, the case 'is moot only if it is shown there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction’ ” (quoting Sibron)). Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), and Gul v. Obama, 652 F.3d 12, 19 (D.C.Cir.2011), were habeas cases that did not apply the Sibron presumption, but the inapplicability of the presumption did not depend upon a distinction between direct review and habeas. In Spencer, the petitioner challenged not a criminal conviction but rather the revocation of his parole. In Gul, the petitioner challenged not a criminal conviction but rather his designation as an enemy combatant. Neither decision rested merely upon the ground the case sounded in habeas. The present Court’s different view of the matter is of no moment, however; as explained below, binding precedent unfortunately but unambiguously dictates the Sibron presumption applies to the direct review of a criminal conviction, such as Hamdan presents here.

 The INA defines "[e]ngage in terrorist activity” to include committing "an act that the actor knows, or reasonably should know, affords material support ...:
(aa) for the commission of a terrorist activity;
(bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity; [or]
(cc) to a terrorist organization ... [designated as such by the Secretary of State]
Id. § 1182(a)(3)(B)(iv)(VI). A military commission, the Convening Authority, and the Court of Military Commission Review each separately found beyond a reasonable doubt that Hamdan provided material support generally to al Qaeda, and specifically for an act of terrorism by, among other things, serving as Osama bin Laden’s driver and bodyguard from 1996 to 2001, with the knowledge Hamdan "was protecting the leader of al Qaeda” and was "facilitating communication and planning used for acts of terrorism,” United States v. Hamdan, 801 F.Supp.2d 1247, 1259 (C.M.C.R.2011); see also id. at 1254, 1258, 1323. Al Qaeda has been designated as a "foreign terrorist organization” by the State Department since 1999. See Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,012, 55,012 (Oct. 8, 1999) (initial designation); 66 Fed. Reg. 51,088, 51,089 (Oct. 5, 2001) (redesignation).

 Although we reverse Hamdan’s criminal conviction for material support, we do so not for lack of evidence but rather because the Military Commissions Act of 2006 does not authorize retroactive prosecution for an act that was not criminal when done. There is no comparable bar to retroactivity that prevents the Government from attaching to those same acts adverse immigration consequences. See Marcello v. Bonds, 349 U.S. 302, 314, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) ("the prohibition of the ex post facto clause does not apply to deportation”).

 In addition to that statutory basis for Hamdan’s permanent exclusion, Hamdan would not be physically able to re-enter the country because of his automatic inclusion, as a former Guantanamo detainee, on the 'No Fly List.’ See 49 U.S.C. § 44903(j)(2)(C)(v); cf. Gul v. Obama, 652 F.3d 12, 19 (D.C.Cir.2011) (former detainees are "barred from flights entering the United States regardless whether a court declares they were unlawfully detained. An order granting a detainee’s habeas petition would not mean his exoneration, nor would it be a determination he does not pose a threat to American interests; it would mean only that the Government has not proven the detainee more likely than not 'materially supported]' ” terrorism).

 Recidivism rates of convicts released from prisons in the United States are well-known and substantial. See Dep’t of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1994 1 (June 2002) (using a sample of 272,111 former prisoners in 15 states, study showed 46.9% were convicted of another offense within three years of release). Recidivism rates among Guantanamo detainees are comparatively speculative, but insofar as they are known, are rather modest. See Director of National Intelligence, Summary of the Reengagement of Detainees Formerly Held at Guantanamo Bay, Cuba 1 (March 1, 2012) (of 599 detainees released from Guantanamo, 4.7% detained again and "confirmed of reengaging” in hostilities over a nine-year period). Presuming that collateral consequences arise from a conviction by a military commission for violating the law of war and persist after the convict is released into a foreign country, therefore, hardly seems justified. Cf. Gul, 652 F.3d at 17 ("not[ing] detention at Guantanamo and designation as an enemy combatant are recent phenomena; [therefore a court] ha[s] no basis for inferring they routinely have collateral consequences”).